[No. B070514. Second Dist., Div. Two. Aug. 9, 1993.]

J. ALEXANDER SECURITIES, INC., Plaintiff and Appellant, v. SIGNE MENDEZ, Defendant and Respondent.

**Counsel**

Graven, Perry, Block, Brody & Qualls and Ralph B. Perry III for Plaintiff and Appellant.

Ross & Scott and Diana P. Scott for Defendant and Respondent.

## OPINION

NOTT, J.—J. Alexander Securities, Inc., appeals from the judgment entered against it following the trial court's denial of a motion to correct an arbitration award that included punitive damages. We affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

In 1980, respondent Signe Mendez, an elderly widow, opened a securities account with appellant J. Alexander Securities, Inc., a brokerage firm in Los Angeles. Respondent executed an agreement regarding payment for securities purchased on her behalf, entitled "Cash Account Agreement." The cash account agreement provided, inter alia, that, "[t]his agreement and its enforcement shall be governed by the laws of the State of New York . . . ."[1] The cash account agreement also contained a clause providing for arbitration of "any dispute or controversy between [appellant and respondent] arising under any provision of the federal securities laws" and "all other disputes or controversies between us arising out of [appellant's] business or this agreement."[2]

In 1991, a dispute arose in which respondent alleged that appellant and Andrew Weber, an account manager employed by appellant, had engaged in securities fraud, deceptive practices, account churning and unauthorized and unsuitable stock trades, resulting in substantial financial losses to respondent. The parties, without objection, submitted their dispute to arbitration before a National Association of Securities Dealers (NASD) panel of three arbitrators.[3] In January 1992, hearings on the controversy were conducted before the panel in Los Angeles. It is undisputed that the issue of punitive

---

[1]Appellant is a member of the National Association of Securities Dealers which is headquartered in New York. According to appellant, the majority of the trades made on respondent's behalf were executed on the New York Stock Exchange, and all transactions in her account with appellant were cleared through a corporation headquartered in New York.

[2]The arbitration provisions read in full: "ANY DISPUTE OR CONTROVERSY BETWEEN US ARISING UNDER ANY PROVISION OF THE FEDERAL SECURITIES LAWS CAN BE RESOLVED THROUGH LITIGATION IN THE COURTS IF THE UNDERSIGNED SO CHOOSES. THE UNDERSIGNED ALSO UNDERSTANDS THAT ARBITRATION IS AVAILABLE WITH RESPECT TO SUCH DISPUTES. Additionally, all other disputes or controversies between us arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules [of] the Board of Governors of the New York Stock Exchange, Inc., or pursuant to the Code of Arbitration Procedures of the National Association Of Securities Dealers, Inc., as the undersigned may elect. . . ."

[3]According to appellant, only one of the arbitrators was connected with the securities industry, and the other two were "public" arbitrators, in accordance with NASD rules. The rules provide for selection of the panel by the NASD director of arbitration, and the parties then have the opportunity to exercise unlimited challenges for cause and one peremptory challenge.

damages was submitted to the arbitrators.[4] On March 10, 1992, the panel awarded respondent $27,000 in compensatory damages, for which appellant and Weber were held jointly liable, and $27,000 in punitive damages against appellant only, for the "failure to meet its duty and obligation to adequately supervise Andrew E. Weber, in that it did not come up to the standard of supervision required to assure compliance with applicable securities regulations."

In April 1992, appellant moved to correct the arbitration award pursuant to Code of Civil Procedure section 1286.6, on the ground that the arbitrators had exceeded their powers by awarding punitive damages. It contended that pursuant to the cash account agreement, the arbitrators were bound by New York law, and that New York law prohibits arbitrators from awarding punitive damages. Respondent opposed the motion on the grounds that (1) the cash account agreement was not the subject of the arbitration, and thus, its provisions did not apply; (2) there was no agreement to apply New York law, and in fact, the arbitrators did not apply New York law; (3) even if there had been an agreement that New York law applied, the matter of punitive damages was a procedural issue, which was governed by NASD rules and California law, and would not be affected by New York law; and (4) the award of punitive damages did not violate due process principles because appellant and Weber knew that respondent was seeking punitive damages, and litigated that issue in the arbitration.

The court denied the motion to correct the award, and confirmed the award "on the grounds set forth in the opposition papers." Judgment was entered accordingly.

## CONTENTIONS ON APPEAL

Appellant contends the trial court erred in denying its motion to correct the award and vacate the punitive damages because (1) the parties never agreed to grant the arbitrators the power to award punitive damages, (2) the arbitrators exceeded their powers by awarding punitive damages since they were bound by New York law, and (3) the award of punitive damages resulted in a denial of due process.

Respondent requests sanctions against appellant for the filing of a frivolous appeal. (Code Civ. Proc., § 907.)

---

[4]Respondent requested that we take judicial notice of her statement of claim presented to the panel and appellant's answer. We deferred ruling on this request pending consideration of this appeal. We have granted the request (*Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 842 [97 Cal.Rptr. 100]; *National Automobile & Cas. Ins. Co.* v. *Payne* (1986) 261 Cal.App.2d 403, 408 [67 Cal.Rptr. 784]; Code Civ. Proc., § 909) but in doing so, do not purport to review the merits of the arbitrators' decision. (Cf. *City of Oakland* v. *United Public Employees* (1986) 179 Cal.App.3d 356, 366, fn. 3 [224 Cal.Rptr. 523].)

## Discussion

Code of Civil Procedure section 1286.6 provides that an arbitration award shall be corrected if "(a) [t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

Code of Civil Procedure section 1286.2 provides five specific grounds under which a court can vacate an arbitration award: (1) if the award was procured by corruption, fraud, or other undue means; (2) if any of the arbitrators was corrupt; (3) if the rights of a party were substantially prejudiced by the misconduct of an arbitrator; (4) if the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or (5) the rights of a party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon a showing of sufficient cause, to hear material evidence, or by any other conduct.

■ These statutes provide the exclusive grounds upon which a court may review private arbitration awards. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 26-28 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Judicial review of arbitration awards is limited to these specific and narrow statutory grounds, since "by voluntarily submitting to arbitration, the parties have agreed to bear [the risk of an erroneous decision by the arbitrator] in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Id.* at pp. 11-12.)

The recently decided *Moncharsh* case represents a significant shift in California law towards private dispute resolution. The clear impact of that case is to allow parties the latitude to select their method of dispute resolution and to promote judicial restraint from interfering with that process and the resulting judgment unless there are extremely egregious circumstances surrounding the method of resolution.

Appellant contends that the award must be corrected pursuant to Code of Civil Procedure section 1286.6, subdivision (b), because the arbitrators exceeded their powers and that the award can be corrected merely by striking the punitive damages portion of the award.

(1) *The Arbitrators Did Not Exceed Their Powers in Awarding Punitive Damages*

A. *The Arbitrators Were Not Precluded From Awarding Punitive Damages by Virtue of the New York Law Provision.*

 The parties do not dispute that under New York law, arbitrators have no authority to award punitive damages. (*Garrity* v. *Lyle Stuart, Inc.* (1976) 40 N.Y.2d 354 [386 N.Y.S.2d 831, 353 N.E.2d 793, 83 A.L.R.3d 1024].) Assuming that the cash account agreement governed the dispute submitted to arbitration,[5] and that pursuant to it the parties agreed that the arbitrators were to apply New York law in resolving the dispute, the choice of law provision does not compel us to vacate the award of punitive damages.[6]

Because the cash account agreement "evidenced a transaction in interstate commerce," the Federal Arbitration Act (FAA) applies. (9 U.S.C. § 2; *Bonar* v. *Dean Witter Reynolds, Inc.* (11th Cir. 1988) 835 F.2d 1378, 1387; *Raytheon Co.* v. *Automated Business Systems, Inc.* (1st Cir. 1989) 882 F.2d 6, 9.) The purpose and effect of the FAA is to encourage arbitration of civil disputes outside the judicial forum. (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 10-11, [79 L.Ed.2d 1, 13, 104 S.Ct. 852, 859]; *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 22 [74 L.Ed.2d 765, 784-786, 103 S.Ct. 927, 941-942].) The FAA creates a body of federal substantive law which governs the question of arbitrability in both state and federal courts. (*Southland Corp.* v. *Keating, supra,* at p. 12 [79 L.Ed.2d at p. 13]; *Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* at p. 24 [74 L.Ed.2d at p. 785]; *Todd Shipyards Corp.* v. *Cunard Line, Ltd.* (9th Cir. 1991) 943 F.2d 1056, 1062.) The overriding principle underlying the FAA is that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* at pp. 24-25 [74 L.Ed.2d at pp. 785-786].) Federal policy supports vesting arbitrators with the authority to award punitive damages if the parties' agreement contemplates such an award. (*Todd Shipyards Corp.* v. *Cunard Line, Ltd., supra,* at pp. 1062-1063; *Bonar* v. *Dean Witter Reynolds, Inc., supra,* at p. 1387; *Raytheon Co.* v. *Automated Business Systems, Inc., supra,* at pp. 11-12; *Willoughby Roofing & Supply* v. *Kajima Intern.* (N.D.Ala. 1984) 598 F.Supp. 353, 360, affd. in (11th Cir. 1985) 776 F.2d

---

[5]Respondent claims that the cash account agreement did not constitute the entire agreement between the parties, and was merely an exhibit introduced at the arbitration proceedings to establish appellant's lack of discretion in stock purchases. However, there is no indication from the record what comprised the "entire agreement" between the parties.

[6]The parties concede that the New York prohibition on punitives was not argued in the arbitration proceedings.

269.)[7] The choice of law provision, therefore, merely designates the substantive law that the arbitrators must apply in determining whether the conduct of the parties warrants an award of punitive damages; it does not deprive the arbitrators of their authority to award punitive damages. (*Bonar* v. *Dean Witter Reynolds, Inc.*, *supra*, at p. 1387; *Willoughby Roofing & Supply* v. *Kajima, Intern.*, *supra*, at p. 359, *Raytheon Co.* v. *Automated Business Systems, Inc.*, *supra*, at p. 11, fn. 5, *Willis* v. *Shearson/American Express, Inc.* (M.D.N.C. 1983) 569 F.Supp. 821, 824; *Singer* v. *E.F. Hutton & Co., Inc.* (S.D.Fla. 1988) 699 F.Supp. 276, 279.)

### B. *The Agreement Contemplated the Award of Punitive Damages.*

■ Appellant contends that even apart from the choice of law provision, there was nothing in the parties' agreement which indicated that punitive damages were contemplated. A review of the cash account agreement reveals that appellant is correct; there is nothing contained therein which either expressly includes or excludes awards of punitive damages.

It is undisputed that the agreement of the parties controls the scope of the arbitrators' authority. (See *United Steelworkers* v. *Enterprise Corp.* (1960) 363 U.S. 593, 597 [4 L.Ed.2d 1424, 1428, 80 S.Ct. 1358]; *Totem Marine Tug & Barge* v. *North Am. Towing, Inc.* (5th Cir. 1979) 607 F.2d 649, 651.) Here, the agreement to arbitrate contained in the cash account agreement encompassed "any dispute or controversy between [the parties] arising under any provision of the Federal securities laws" and "all other disputes or controversies between [the parties] arising out of [appellant's] business or this agreement." These clauses clearly seem to contemplate a wide range of tort and contract claims. Moreover, clauses similar to these have been held sufficiently broad to encompass awards of punitive damages. (See e.g., *Raytheon Co.* v. *Automated Business Systems, Inc.*, *supra*, 882 F.2d at pp. 7, 10-12 ["[a]ll disputes arising in connection with the Agreement shall be settled by arbitration . . . ."]; *Willoughby Roofing & Supply* v. *Kajima Intern.*, *supra*, 598 F.Supp. at pp. 355, 358 ["[a]ll claims, disputes, and other matters in question arising out of, or relating to, this Agreement or Work Assignment or the breach thereof . . . shall be resolved by arbitration . . . ."]; *Willis* v. *Shearson/American Express, Inc.*, *supra*, 699 F.Supp. at pp. 822-823 ["any controversy arising out of or relating to my accounts, the transactions with you or me or to this agreement or the breach thereof, shall

---

[7]We decline to follow two Second Circuit cases, *Barbier* v. *Shearson Lehman Hutton Inc.* (2d Cir. 1991) 948 F.2d 117, 122 and *Fahnestock & Co.* v. *Waltman* (2d Cir. 1991) 935 F.2d 512, 518, which held, contrary to the cases cited above, that state law relating to the propriety of a punitive damages award by an arbitrator is not preempted by federal substantive law, and thus vacated the punitive damage awards. (See further discussion of these cases, *post.*)

be settled by arbitration . . . ."].) We likewise hold that the arbitration provisions in the cash account agreement contemplated punitive damages.

Appellant further argues that because the cash account agreement also provides that the arbitration be conducted in accordance with New York Stock Exchange (NYSE) Rules or the Code of Arbitration Procedures of the NASD, which are silent on the issue of punitive damages, such an award was not contemplated by the parties. Appellant distinguishes *Todd Shipyards Corp.* v. *Cunard Line, Ltd., supra,* 943 F.2d 1056 and *Bonar* v. *Dean Witter Reynolds, Inc., supra,* 835 F.2d 1378, cases which upheld punitive damage awards by arbitrators despite New York choice of law provisions, on the grounds that those cases involved arbitration agreements which incorporated the rules of the American Arbitration Association (AAA) instead of NASD rules. The AAA rules provide that the arbitrator may "grant *any* remedy or relief which is just and *equitable* and within the terms of the agreement of the parties." (Italics added.) Appellant contends that because this arbitration was conducted under the auspices of the NYSE and NASD and not pursuant to the AAA, an award of punitive damages was not contemplated by the agreement, citing *Fahnestock and Co., Inc.* v. *Waltman, supra,* 935 F.2d 512.

In *Fahnestock,* the arbitration agreement incorporated the NYSE arbitration rules which do not have any provisions relating to remedies or relief. The Second Circuit held that those rules did not contemplate punitive damage awards despite the fact that the NYSE award form contains a specific section for punitives.[8] We do not find, given the overwhelming policy favoring arbitrability enunciated by other federal circuits, that the NASD's failure to specifically address the issue of damages in its arbitration rules manual expressly precluded the arbitrators here from awarding punitive damages. (See *Shearson/American Express, Inc.* v. *McMahon* (1987) 482 U.S. 220 [96 L.Ed.2d 185, 107 S.Ct. 2332], holding that RICO claims, including those seeking treble damage awards, are arbitrable under the FAA.)

Another Second Circuit case, *Barbier* v. *Shearson Lehman Hutton Inc., supra,* 948 F.2d 117, reversed an order confirming a punitive damages award despite a New York choice of law provision in the parties' agreement to arbitrate. The court found that the measure of damages is a matter of state substantive law and that the choice of law provision reflected the agreement

---

[8]The court in *Fahnestock,* however, noted that while no choice of law provision was contained in the agreement to arbitrate, New York law applied because diversity was the basis for subject matter jurisdiction, and that "NYSE arbitrations occur throughout the nation, and our holding here does not mean that in those states in which arbitral punitive damages awards are permitted, arbitrators may not appropriately utilize the punitive damages section of the award form." (935 F.2d at p. 519.)

and the intention of the parties, and thus, it was merely enforcing the terms of their agreement by voiding the punitive damage award. (*Id.* at p. 122.)

The results in *Fahnestock* and *Barbier* are in direct contravention to the prevailing policy in California. Two California cases have dealt squarely with the issue of an arbitrator's authority to award punitive damages. In *Baker* v. *Sadick* (1984) 162 Cal.App.3d 618 [208 Cal.Rptr. 676], a patient about to undergo surgery signed an agreement which provided that "any dispute as to medical malpractice . . . will be determined by submission to arbitration." A panel of arbitrators awarded the patient punitive damages in conjunction with her medical malpractice claim. On appeal from an order confirming that portion of the award, the Fourth District found, inter alia, that the agreement did not preclude a punitive damage award since the parties did not have a "plain and clear" mutual understanding that punitive damages would *not* be awarded, and that state public policy favored arbitration of medical malpractice claims. (*Id.* at pp. 626, 630.) In a later decision, *Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843 [265 Cal.Rptr. 440], an appeals court found that while an arbitration clause which provided for arbitration of " 'any controversy aris[ing] between the parties . . . concerning this Joint Venture, construction of said project, or the rights and duties of any party under this Agreement,' " did not specifically allow for punitive damages, it was not irrational to conclude that the parties contemplated the possibility of punitive damages and that the arbitrators did not act in excess of their powers in awarding punitives. (*Id.* at p. 855.) Based on the absence of any express clause in the cash account agreement or in the NASD rules prohibiting an award of punitive damages, we cannot say the arbitrators acted in excess of their powers.

Furthermore, any suggestion that respondent waived her right to punitive damages by signing the cash account agreement is wholly without merit. Respondent was obviously required to sign the document as a prerequisite to doing business with appellant and it is doubtful she had the opportunity to negotiate any of its terms. The cash account agreement does not explicitly address the issue of punitives, nor should respondent, a consumer residing in Los Angeles, have been expected to know the applicable provisions of New York law or the NASD rules concerning punitive damages.[9] Without a voluntary and intentional relinquishment of a known right, respondent cannot be deemed to have waived her right to punitive damages. (*Bonar* v. *Dean Witter Reynolds, Inc., supra,* 835 F.2d at pp.

[9]Indeed, appellant contended in both the trial court and on appeal, that the sole reason for incorporating a New York law provision was to preclude punitive damage awards. It, however, did not see fit to spell out that reason in plain language in the cash account agreement, but instead, disguised it.

1387-1388; *Raytheon Co.* v. *Automated Business Systems, Inc., supra,* 882 F.2d at pp. 11-12.)

Moreover, it is a standard principle of contract interpretation that ambiguities be resolved against the drafter. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882-884 [27 Cal.Rptr. 172, 377 P.2d 284]; see Rest.2d Contracts (1981) § 206 pp. 105-106; 4 Williston on Contracts (3d ed. 1961) § 621, pp. 760-774.) Appellant drafted the cash account agreement and was perfectly capable of including an express exclusion of the availability of punitive damages but did not do so. (*Raytheon Co., supra,* 882 F.2d at p. 12.) In the absence of an express exclusion, however, we will not automatically assign such a prohibition to their agreement. (*Willoughby Roofing & Supply* v. *Kajima Intern., supra,* 598 F.Supp. 353, 358; *Ehrich* v. *A. G. Edwards & Sons, Inc.* (D.S.D. 1987) 675 F.Supp. 559, 564; *Baker* v. *Sadick, supra,* 162 Cal.App.3d 618, 626.)

In view of our holding, we need not reach the question as to whether the award can be corrected by simply striking the punitive damage portion.

### (2) *Appellant Was Not Deprived of Due Process*

▮ Appellant contends the absence of constraints upon arbitrators in awarding punitive damages and lack of judicial review result in a denial of its due process rights, citing *Pacific Mut. Life Ins. Co.* v. *Haslip* (1991) 499 U.S. 1 [113 L.Ed.2d 1, 111 S.Ct. 1032]. In *Haslip,* the Supreme Court addressed the constitutionality of jury-awarded punitive damages which were four times the amount of the compensatory damages. The award was upheld after the Supreme Court found that the record supported the award, and that the procedural safeguards employed by the Alabama trial and appellate courts did not violate due process principles.

Appellant claims that because there were no "meaningful constraints" upon the arbitrators nor sufficient facts to support the award, the arbitrators' award of punitive damages was arbitrary and capricious. A similar argument was rejected by the Ninth Circuit in *Todd Shipyards Corp.* v. *Cunard Line, Ltd., supra,* 943 F.2d at page 1063, decided approximately five months after *Haslip,* where the court found that the award did not result in a denial of due process to appellant since it had notice that respondent sought punitive damages, and was given the opportunity to present evidence, to argue the merits of its position, and to challenge the arbitrator's award. (*Todd Shipyards Corp.* v. *Cunard Line, Ltd., supra,* 943 F.2d at pp. 1063-1064; *Raytheon Co.* v. *Automated Business Systems, Inc., supra,* 882 F.2d at pp. 8-9.) Here, appellant has not alleged any facts which would support its contention

that the arbitrators acted arbitrarily and capriciously, facts which would entitle it to move to vacate the award pursuant to Code of Civil Procedure section 1286.2, subdivisions (a),(b), (c), or (e). Appellant does not claim that it did not have notice of respondent's claim for punitive damages, nor that it was precluded from presenting any evidence or legal theories militating against such an award. Moreover, the dispute was presented to a panel of three arbitrators, selected by the parties, which was much less likely than a jury to be swayed by passion and prejudice. (See *Willoughby Roofing & Supply* v. *Kajima Intern.*, *supra*, 598 F.Supp. 353, 358, 363 ["Indeed, an arbitrator steeped in the practice of a given trade is often better equipped than a judge not only to decide what behavior so transgresses the limits of acceptable commercial practice in that trade as to warrant a punitive award, but also to determine the amount of punitive damages needed to (1) adequately deter others in the trade from engaging in similar misconduct, and (2) punish the particular defendant in accordance with the magnitude of his misdeed. *See generally,* Note, *Punitive Damages in Arbitration: The Search for a Workable Rule*, 63 Cornell L.Rev. 272 (1978)."].) We therefore find no violation of its due process rights.

California has already addressed the issue of the lack of judicial review of punitive damage arbitration awards in *Baker* v. *Sadick, supra,* 162 Cal.App.3d 618, 630. That opinion stated: "Finally, we are not persuaded by the argument if an arbitrator is permitted to award punitive damages in medical malpractice claims submitted to arbitration agreements to arbitrate will be discouraged because punitive damages awards are not reviewable. A holding [that] punitive damages may be awarded in arbitration of a medical malpractice claim required to be submitted to arbitration by an arbitration agreement as broad as the one here involved does not divest the parties of their power to control the scope of arbitration by the terms of their agreement." (*Ibid.*) We find nothing in *Haslip* that warrants alteration of this policy.

In light of the overwhelming policy arguments favoring arbitration as an alternative dispute resolution forum, as enunciated in *Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th 1, we see no reason to limit those awards where parties have agreed to resolve their disputes outside the judicial forum.

### (3) *Respondent's Request for Sanctions Is Denied*

Respondent requests attorney fees and penalties on the grounds that the appeal is frivolous. Although we have determined that the appeal is not meritorious, we do not conclude that it was frivolous. We therefore deny respondent's request.

DISPOSITION

The judgment confirming the arbitration award is affirmed. Respondent is awarded her costs on appeal.

Gates, Acting P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 24, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.