[No. B074042. Second Dist., Div. Two. Sept. 28, 1994.]

RIFKIND & STERLING, INCORPORATED, Plaintiff and Respondent, v. ROBERT GORE RIFKIND, Defendant and Appellant.

**COUNSEL**

Bird, Marella, Boxer, Wolpert & Matz, Joel E. Boxer, Thomas R. Freeman, Morgan, Lewis & Bockius and Thomas Henry Coleman for Defendant and Appellant.

Phillip Schlosberg for Plaintiff and Respondent.

**OPINION**

**FUKUTO, J.**—Concern about potential for arbitrariness in punitive damage awards by juries has recently led to recognition of certain constitutional, due process limitations on the imposition of such awards. In this case, the appellant contends that one of those limitations, the requirement of judicial review, must apply to a punitive damage award assessed not by a court or a jury, but by a private arbitrator, under a voluntary agreement to arbitrate. We disagree. We conclude that, just as the constitutional guarantees of due process do not control private arbitration proceedings, judicial enforcement of an arbitrator's punitive damage award need not as a matter of due process include judicial review of the merits of the award.

## STATEMENT OF THE CASE

Defendant Robert Gore Rifkind (Rifkind) appeals from a judgment confirming a $141,826 contractual arbitration award to plaintiff Rifkind & Sterling, Incorporated (R&S), including attorney fees of $30,957 and punitive damages of $25,000. Rifkind contends that these elements of the award exceeded the arbitrator's authority, and hence the award should have been corrected to delete them. (Code Civ. Proc., § 1286.6, subd. (b).)[1] Responsively, R&S seeks attorney fees on appeal, either as sanctions for a frivolous appeal or under the contract in suit. We affirm the judgment, deny sanctions, and remand for determination of attorney fees on appeal.

Rifkind was a principal of R&S, a now defunct law firm. In 1987, the parties entered into a written agreement settling disputes and litigation between them (the agreement). Among other things, R&S agreed to pay Rifkind proportions of certain accounts receivable and accounts collected. R&S also agreed to "use its best efforts to transfer" to Rifkind a 26.65 percent interest in certain securities it held, including Statewide Calbidco bonds. The agreement provided that Rifkind "shall have the right to take all appropriate efforts to effectuate the transfer of said securities to" him. By contemporaneous letter agreement, R&S also promised to share with Rifkind a stock dividend of a company named UNUM.

Paragraph 20 of the agreement provided for arbitration of any controversy arising from it. The arbitrator was to be selected by agreement of counsel for the parties or, failing that, by assignment of a retired judge by the presiding judge of the superior court. The agreement recited that "Said arbitration shall be informal and without attorneys." The parties agreed to share the arbitrator's fees equally, and that the award would be in writing, final, binding, and judicially enforceable.

The agreement also included an attorney fees provision, paragraph 26, which stated: "In the event of any arbitration or litigation arising from this Agreement, the prevailing party shall be entitled to all costs incurred in enforcing this Agreement, including attorneys' fees."

In 1991, R&S commenced the first of two lawsuits against Rifkind regarding the subject matter of the ultimate arbitration award. Under numerous theories, including breach of contract and conversion, R&S alleged that Rifkind had transferred to himself all of the UNUM and Calbidco securities

---

[1]Undesignated section citations hereafter are to the Code of Civil Procedure.

subject to the agreement.[2] R&S prayed for punitive as well as compensatory damages.

Through counsel, Rifkind demanded arbitration under the agreement. R&S's counsel offered to arbitrate, under the rules and auspices of the American Arbitration Association. Rifkind agreed, and the action as against him was dismissed without prejudice.

However, after several months of correspondence Rifkind had not signed the proposed arbitral submission agreement; he refused to correspond with R&S's lawyers, citing the agreement's "without attorneys" provision. In January 1992, R&S sued Rifkind again, reasserting its claims and again praying for punitive damages. Rifkind filed a demurrer, asserting that all claims were subject to arbitration under the agreement. The demurrer was sustained with leave to amend. R&S filed an amended complaint, alleging that Rifkind had waived his right to arbitration by refusing to submit to it the previous year. Concurrently, R&S filed a petition to compel arbitration, under the agreement. (See § 1281.2.)

The court granted the petition and stayed the action. After the parties failed to agree on an arbitrator, the court appointed a retired superior court judge, and ordered that the parties pay his fees equally. Rifkind did not advance his share of the initial fees, so R&S paid them.

Before the arbitration hearing, the arbitrator, in response to activity by R&S's attorneys, directed R&S that "future conduct of this proceeding must be through the parties directly without other attorney participation, as provided in paragraph 20 of your Settlement Agreement, as I interpret it." The hearing was held in November 1992. Rifkind appeared in propria persona, and R&S appeared through two firm members. R&S sought attorney fees of $16,275 for their services, plus $37,367 for outside counsel's handling of the two superior court actions and attendant, prearbitration hearing proceedings. Rifkind, too, sought to recover fees for his prehearing representation by counsel. In pursuit of punitive damages, R&S introduced in evidence Rifkind's financial statement.

In December 1992, the arbitrator rendered his award, assessing Rifkind $82,409 for conversion of UNUM shares, $880 plus interest for conversion of Calbidco securities, $30,957 attorney fees, and $25,000 punitive damages (plus arbitrator's fees). The award of punitive damages was "based on a finding that the conduct of [Rifkind] in converting to himself the shares . . . to which [R&S] was entitled, was willful, malicious and intentionally fraudulent. In determining the amount to be awarded the Arbitrator also considered [Rifkind's] financial worth and ability to pay." Rifkind's cross-claim in

---

[2]The suit also named other persons allegedly involved in the transfer.

the arbitration, relating to the agreement's provision for sharing receivables, was denied.

Upon receipt of the award, Rifkind wrote the arbitrator a letter, protesting it on several grounds. He challenged the attorney fees award on grounds it covered litigation, allegedly in violation of the agreement's arbitration provisions. Concerning the punitive damages, Rifkind asserted his innocence and suggested that "[i]f there is anyone against whom punitive damages should be assessed, it is [R&S].[3] The arbitrator adhered to the award.

R&S then filed a petition to confirm the award (styled a motion, in the original, stayed action). (See § 1285.) Rifkind filed a response, seeking vacation or correction of the award with regard to the attorney fees and punitive damages, on grounds the arbitrator had exceeded his powers in granting them. (See §§ 1285.2, 1285.8, 1286.2, subd. (d), 1286.6, subd. (b).) With respect to the latter, Rifkind for the first time raised the contention that the agreement had not conferred authority to assess punitive damages, because it did not expressly waive his due process right to judicial review of such damages. The superior court rejected Rifkind's contentions, confirmed the arbitration award, and entered judgment for the amount of the award. (See § 1287.4.)

DISCUSSION

1. *The Award for Attorney Fees.*

■ The parties agreed that "In the event of any arbitration or litigation arising from this Agreement, the prevailing party shall be entitled to all costs incurred in enforcing this Agreement, including attorneys' fees." Notwithstanding this provision, Rifkind contends that the award for attorney fees exceeded the arbitrator's powers, as conferred by the agreement. Rifkind reasons that R&S's fees for superior court litigation were not incurred to enforce the agreement, but to avoid its provision for arbitration as opposed to litigation. Similarly, he contends, R&S's fees incurred after arbitration was ordered, or for the hearing itself, fell outside the reach of the agreement, because of its provision that the arbitration was to be "informal and without attorneys."

For numerous reasons, this argument must fail. First, the amount of the attorney fees award, as contrasted with what R&S requested, admits of no inference that the arbitrator allowed fees for either the arbitration hearing or

---

[3]In response, R&S requested that the punitive damages be increased, in view of Rifkind's unrepentant attitude.

preparation for it. Second, the fees and legal work that accrued before the arbitration was ordered cannot be one-dimensionally characterized as devoted to avoiding arbitration. Not only did much of them actually involve attempting to perfect arbitration, but more broadly and fundamentally, all of R&S's litigation expenses were incurred to "enforc[e] the Agreement," i.e., R&S's substantive rights under it. Moreover, the agreement affirmatively provided for attorney fees for enforcement litigation, as well as for arbitration.

Rifkind's position depends upon giving the agreement a singular, contrary construction, as allowing for attorney fees only for informally invoking arbitration and enforcing its outcome. But that is not the only reasonable interpretation—if indeed it be one at all—to which the agreement and its attorney fees clause are susceptible. Accordingly, the arbitrator's enforcement of the agreement with respect to attorney fees did not exceed his authority, and it is unimpeachable here. (See *Blue Cross of California* v. *Jones* (1993) 19 Cal.App.4th 220, 226, 228-229 [23 Cal.Rptr.2d 359].)

2. *The Award for Punitive Damages.*

 Rifkind's contention that the arbitrator exceeded his powers in awarding punitive damages (see § 1286.6, subd. (b)) is grounded in the due process clauses of the United States and California Constitutions. (U.S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 7, subd. (a).)[4] Although somewhat inconsistently stated, Rifkind's argument in essence runs as follows. The United States Supreme Court has ruled that the due process clause requires some measure of judicial review of the size of and basis for a punitive damage award. However, in California no such review of a private arbitrator's award is available. Hence, such an award for punitive damages cannot lawfully be made, unless the defendant expressly waives the right to judicial review of it. Because Rifkind did not make such a waiver, in the agreement or otherwise, the arbitrator was not empowered to award punitive damages against him. We examine the components of this position.

Preliminarily, Rifkind cannot successfully assert—as he ambiguously, glancingly appears to—that relief by punitive damages exceeded the express provisions of the agreement, which empowered the arbitrator. The agreement's arbitration clause provided that "If any controversy shall arise between the parties hereto arising from or with respect to this Agreement, the

---

[4]Rifkind relies almost exclusively on applications of the federal due process clause, and he advances no reason why disposition of his federally based claim should not control the parallel state constitutional issue. (Cf. *Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268, 282 [146 Cal.Rptr. 208, 578 P.2d 925] [*Garfinkle*].) We therefore do not discuss it separately.

controversy shall be submitted to mandatory, binding arbitration." Several recent decisions have held that similar or identical language expressed a remedial intent sufficiently broad to empower the arbitrator to entertain a claim for punitive damages. (*J. Alexander Securities, Inc.* v. *Mendez* (1993) 17 Cal.App.4th 1083, 1091-1093 [21 Cal.Rptr.2d 826] [*Mendez*]; *Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 854-855 [265 Cal.Rptr. 440].)

Moreover, by his own conduct Rifkind registered agreement with this interpretation. When he repeatedly sought to invoke the arbitration clause, he asserted that it covered all of R&S's claims, including those for punitive damages. Later, after the arbitrator announced the punitive damage award, Rifkind did not contend that such damages were beyond the purview of the agreement. In fact, he suggested that they should be imposed on R&S. The arbitrator was reasonably entitled to view the parties' agreement as authorizing him to award punitive damages.

Rifkind contends that due process imposes a further precondition not present here, namely, observance or express waiver of the right to judicial review of a punitive damage award. Rifkind finds the asserted constitutional right in the Supreme Court's recent expressions that due process forbids the states from imposing punitive damages without judicial review of the trier of fact's assessment of them.

That position was adumbrated in *Pacific Mut. Life Ins. Co.* v. *Haslip* (1991) 499 U.S. 1 [113 L.Ed.2d 1, 111 S.Ct. 1032] (*Haslip*), in which the court implied that "unlimited jury discretion—or unlimited judicial discretion for that matter—in the fixing of punitive damages" would be unconstitutional. (*Id.* at p. 18 [113 L.Ed.2d at p. 20].) The court proceeded to uphold Alabama's standards and procedures against due process challenge, in part because they included "meaningful and adequate review by the trial court whenever a jury has fixed the punitive damages" (*id.* at p. 20 [113 L.Ed.2d at p. 21]), as well as well-defined appellate review that "provide[d] an additional check on the jury's or trial court's discretion." (*Id.* at pp. 20-21 [113 L.Ed.2d at pp. 21-22].)

In *Honda Motor Co.* v. *Oberg* (1994) 512 U.S. __ [129 L.Ed.2d 336, 114 S.Ct. 2331] (*Honda*), the high court more directly confirmed that due process mandates some degree of judicial review of punitive damages assessed and imposed by state courts. In that case, the Oregon Supreme Court had rejected a claim of excessive punitive damages, because the state's constitution had eliminated entitlement to review of a verdict's excessiveness. The United States Supreme Court traced such review through the history of the common

law, to the uniform current practice of all other states and the federal courts. Opining that postverdict judicial review—or an equivalent not there presented—was also practically necessary to safeguard against arbitrary penalties, the high court held that ". . . Oregon's denial of judicial review of the size of punitive damage awards violates the Due Process Clause of the Fourteenth Amendment." (*Id.* at p. __ [129 L.Ed.2d at p. 350], fn. omitted.)[5]

In the present case, judicial review of the size of the arbitrator's punitive damage award, or its justification, was unavailable. ■ Under sections 1286.2 and 1286.6, the substantive grounds for vacating or correcting an arbitration award extend only to whether the arbitrator exceeded his powers, and that determination does not reach the intrinsic validity of the award. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11, 28 [10 Cal.Rptr.2d 183, 832 P.2d 899] [*Moncharsh*]; see *id.* at pp. 25-26.) ■ Rifkind contends, however, that under *Haslip* and *Honda, supra,* he had a due process right to judicial review of the punitive award, and therefore the arbitrator could not make such an award without Rifkind's knowing and express waiver of that right.

We address the matter of waiver only briefly, because it ultimately is moot. Assuming there were a due process right to judicial review of the award in this case, it would be doubtful that Rifkind failed to waive that right by entering into the agreement. The agreement specified that controversies arising out of it would be decided informally by arbitration, and that the arbitrator's award would be "final, conclusive, and binding." The record indicates that Rifkind was a sophisticated lawyer. On a parallel issue, our Supreme Court has held that an agreement to arbitrate may effectively foreclose the parties' constitutional rights to jury trial, without including an express waiver of them. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 712-714 [131 Cal.Rptr. 882, 552 P.2d 1178].) And although express contractual waivers of due process rights have been required for contracts of adhesion (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 94-96 [32 L.Ed.2d 556, 578-579, 92 S.Ct. 1983]; *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 68-70 [145 Cal.Rptr. 368, 577 P.2d 188] [*Isbell*]), knowing accession to an agreement that effectively waives such rights has been held sufficient to do so where the parties are sophisticated business people. (*D. H. Overmyer Co.* v. *Frick Co.* (1972) 405 U.S. 174, 185-187 [31 L.Ed.2d 124, 133-135, 92 S.Ct. 775].)

---

[5]The opinion of the court summarized and concluded as follows: "A decision to punish a tortfeasor by means of an exaction of exemplary damages is an exercise of state power that must comply with the Due Process Clause of the Fourteenth Amendment. The common law practice, the procedures applied by every other State, the strong presumption favoring judicial review that we have applied in other areas of the law, and elementary considerations of justice, all support the conclusion that such a decision should not be committed to the unreviewable discretion of a jury." (512 U.S. at p. __ [129 L.Ed.2d at p. 351].)

But the fundamental fallacy resides in Rifkind's basic premise, that due process requires judicial review of private arbitral awards of punitive damages. The premise misconceives the applicability of the due process clause. That clause applies only to state action. (U.S. Const., Amend. XIV, § 1 ["nor shall any State deprive any person of life, liberty, or property, without due process of law"]; accord, *Garfinkle, supra,* 21 Cal.3d at p. 276; see *id.* at pp. 281-282 [California's due process clause].) The requirement of judicial review recognized in *Haslip, supra,* 499 U.S. 1, and *Honda, supra,* 512 U.S. __ [129 L.Ed.2d 336], was triggered by, and assessed against, state regimes that undertook to impose punitive damages upon civil defendants through common law, statutory, and constitutional rules and processes. As the *Honda* opinion concluded, "A decision to punish a tortfeasor by means of an exaction of exemplary damages is an exercise of state power that must comply with the Due Process Clause of the Fourteenth Amendment." (*Id.* at p. __ [129 L.Ed.2d at p. 351]; accord, *id.* at p. __ [129 L.Ed.2d at p. 352] (conc. opn. of Scalia, J.).)

The arbitration in this case, however, was not state action. It was a private proceeding, arranged by contract, without legal compulsion. It was intended to provide a simple, final dispute resolution mechanism, independent of legal or court proceedings or, for that matter, of compulsory reliance on either procedural or substantive law imposed by statutes and judicial interpretations. (See *Moncharsh, supra,* 3 Cal. 4th at pp. 10-11.) Before its confirmation, the resulting award possessed the legal status of a private contract. (§ 1287.6.) Consequently, the arbitration and award themselves were not governed or constrained by due process, including its elements applicable to judicial proceedings to impose punitive damages. (See *Horn* v. *Gurewitz* (1968) 261 Cal.App.2d 255, 262 [67 Cal.Rptr. 791]; cf. *Garfinkle, supra,* 21 Cal.3d at pp. 276-277.)[6]

In a supplemental brief we invited, Rifkind agrees "that a private arbitrator's ruling does not constitute state action." He contends, however, that the *Haslip-Honda* right of judicial review becomes constitutionally mandated when confirmation of the award is sought, under state procedures that will convert it into an enforceable judgment. (See § 1285 et seq.) We do not agree.

It is true that a proceeding confirming an arbitration award and converting it into a judicial judgment constitutes state action, governed by

---

[6]In *Mendez, supra,* 17 Cal.App.4th at pages 1094-1095, we also considered a claim that an arbitral award of punitive damages ran afoul of the due process clause. We rejected that contention without explicit reference to the matters discussed above. Although Rifkind urges that we reconsider the *Mendez* decision, we do not, but rather supplement it.

requisites of due process. (See *Isbell, supra,* 21 Cal.3d at p. 68.) But California's statutory procedures provide the due process safeguards traditionally required for a judgment that deprives a person of property, namely, notice and a hearing. (See *ibid.* [confession of judgment]; *Magalnick v. Magalnick* (1979) 98 Cal.App.3d 753, 757-758 [159 Cal.Rptr. 889] [enforcement of foreign judgment].) In addition, the statutes "provid[e] for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh, supra,* 3 Cal.4th at p. 12; see *id.* at p. 13; cf. *Thomas v. Union Carbide Agric. Products Co.* (1985) 473 U.S. 568, 592-593 [87 L.Ed.2d 409, 427-428, 105 S.Ct. 3325] [approving a similar scope of judicial review in a federally mandated arbitration scheme].)

 In contending that such review must, in the case of punitive damages, be constitutionally expanded to the level required for judicial awards, Rifkind selectively dispenses with his own acknowledgment—and the legal and practical reality—that an arbitration award is not a product of public law or state proceedings, but rather is a private arrangement, governed by rules of the parties' own making or selection. The initial imposition of damages, including punitive damages, is not constrained by due process. If the limited state involvement of converting the award into a judgment were to engender the same due process incidents required with respect to an award originally assessed and imposed by a court, the contrasting simplicity, informality, and private nature of arbitration would be seriously undermined. For example, the common law materials through which the high court in *Honda, supra,* 512 U.S. ___, traced the right to review of judicially imposed punitive damages also manifest a similar right with respect to compensatory damages. (*Honda, supra,* 512 U.S. at p. ___, fn. 2 [129 L.Ed.2d at p. 343].) To reckon that due process therefore compels superimposing traditional judicial review of compensatory damages upon private arbitrations would go a long way toward eliminating the latter as a separate and speedy system of dispute resolution. (Cf. *Lindholm v. Galvin* (1979) 95 Cal.App.3d 443, 452 [157 Cal.Rptr. 167] ["[W]e know of no rule of law that would sanction such a hybrid result—a trial by arbitration but an appeal from a judgment confirming an award not subject to the usual limitations on review of an arbitrator's award."].)

Only a limited degree of state action is involved in confirming an arbitration award. The state does not impose the award, or mark out its criteria. It only allows the contracting contestants to secure enforcement of their own bargain. That assertion of state power does require a traditional measure of due process. (E.g., *Isbell, supra,* 21 Cal.3d at p. 68.) But to our knowledge, neither constitutional authority nor due process tradition has ever required,

in this setting, the type of judicial review here contended for. (Compare *Honda, supra,* 512 U.S. at pp. __-__ [129 L.Ed.2d at pp. 343-346], with *Moncharsh, supra,* 3 Cal.4th at pp. 14-28; see *Lindholm* v. *Galvin, supra,* 95 Cal.App.3d at pp. 450-452.) We perceive no mandate to recognize it as a constitutional right.[7]

3. *Attorney Fees on Appeal.*

R&S requests an award of attorney fees for this appeal, either as sanctions for a frivolous appeal or under the attorney fees provision of the agreement. Although Rifkind's appeal does not qualify for sanctions, the agreement allows for R&S's attorney fees as prevailing party—on its face and even under the limited interpretation Rifkind has espoused here. We remit determination of the appropriate amount of fees to the trial court on remand.

## CONCLUSION

The judgment is affirmed. The request for sanctions is denied. Plaintiff shall recover costs, including attorney fees, on appeal.

Boren, P. J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 22, 1994. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[7]Rifkind relies heavily on a dissenting opinion in *Lee* v. *Chica* (8th Cir. 1993) 983 F.2d 883, which opined that assessment of punitive damages was not contemplated by the rules of the American Arbitration Association. (*Id.* at pp. 888-889 (dis. opn. of Beam, J.).) The dissent hinged its interpretation on observations that arbitration did not afford the type of due process constraints, including judicial review, that were discussed in *Haslip, supra,* 499 U.S. 1. The dissenting opinion failed to confront the distinction between arbitration and judicial adjudication discussed above. Moreover, its conclusions are in direct conflict with our decision in *Mendez, supra,* 17 Cal.App.4th 1083.