United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 8, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-20309

VALERIE BIGGS SAROFIM,

Plaintiff-Appellee,

v.

TRUST COMPANY OF THE WEST,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, BENAVIDES, and OWEN, Circuit Judges.

BENAVIDES, Circuit Judge:

The Appellant, Trust Company of the West ("TCW"), asks this Court to vacate an arbitration award for punitive damages. TCW argues that the arbitrators manifestly disregarded applicable law and violated public policy in granting the award. We disagree and hold that vacatur is not required. Therefore, we affirm.

I.  FACTUAL AND PROCEDURAL BACKGROUND

In July 2000, the Appellee, Valerie Biggs Sarofim ("Sarofim"),

invested approximately $12.7 million with TCW, an investment company. The vast majority of the money went into TCW's Concentrated Core Portfolio, which consisted of stocks selected for an emphasis on growth. The remaining $2.2 million went into TCW's Galileo High Yield Bond Fund, a mutual fund consisting of "admitted" junk bonds. Sarofim received the invested money as part of a divorce settlement. During her marriage, her husband and father-in-law handled her finances.

In three years, Sarofim's portfolio lost $6 million. That loss combined with withdrawals for personal expenses meant that by the time she closed the account in May 2003, it contained only $2.5 million. The investment agreements between Sarofim and TCW contained mandatory arbitration provisions. Sarofim initiated arbitration proceedings, claiming breach of fiduciary duty, fraud, unconscionability, constructive fraud, negligent misrepresentation, negligence, and breach of contract. California law governed the agreements.

In July 2004, a three-member arbitration panel heard the dispute. It listened to five days of testimony and reviewed more than 200 exhibits. At the request of the parties, the panel issued a "reasoned award."[1] The twenty-page decision held that TCW

---

[1]"[A] reasoned award is something short of findings and conclusions but more than a simple result." *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 780 (N.D. Ill. 2005) (internal citations omitted).

breached its fiduciary duties to Sarofim by placing her assets in "wholly and negligently unsuitable" investments. The panel found that TCW failed to diversify the investments, failed to educate Sarofim about the risks of investing, and failed to educate itself about Sarofim's needs as an investor. The panel rejected TCW's argument that it served merely as a broker, finding that TCW was Sarofim's financial consultant and adviser. It emphasized that Sarofim gave TCW "virtually all of her liquid assets to manage" and "had no other source of money for living expenses."

The panel awarded Sarofim $6.3 million in actual damages. It denied Sarofim's request for attorney's fees, finding that California law and the arbitration agreement prevented them. As to punitive damages, the arbitrators stated:

> After carefully considering the actions of the parties relative to all issues discussed herein, the Panel finds that breach of TCW's fiduciary duties justifies an award of punitive damages against it . . . .

The panel awarded Sarofim $2.9 million in punitive damages. This amount is approximately the same as the amount Sarofim had requested in attorney's fees.[2]

Sarofim filed a motion with the United States District Court for the Southern District of Texas, seeking confirmation of the award. TCW did not challenge the factual findings or actual damages award, but did seek vacatur on the punitive damages

---

[2] The panel did not explain how it reached the $2.9 million figure for punitive damages.

3

portion.  The district court granted the motion to confirm and denied the motion to vacate.  TCW appeals that decision.

## II.  STANDARD OF REVIEW

This Court reviews a district court's confirmation of an arbitration award *de novo*.  *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 339-40 (5th Cir. 2004).  Review of the award is deferential, with vacatur permitted only on narrow grounds.  *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004); *First Options of Chicago v. Kaplan*, 514 U.S. 938, 942 (1995) (stating that vacatur should occur only in "very unusual circumstances").  In this Circuit, an arbitration award may be vacated on two nonstatutory grounds: if the award displays manifest disregard of the law or is contrary to public policy.  *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 353 (5th Cir. 2004).

## III.  DISCUSSION

### A.  The Panel Did Not Manifestly Disregard Applicable Law

In California, punitive damages are governed by statute.  A party may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a) (West 1997).  Section 3294 defines malice, oppression, and fraud:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable

4

conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

*Id.* § 3294(c). TCW argues that the arbitrators manifestly disregarded this law.[3] It alleges that instead of applying the law, the panel awarded attorneys' fees "disguised" as punitive damages.

A party asserting "manifest disregard" must meet a two-step test. *Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 762 (5th Cir. 1999).

First, where on the basis of the information available to the court it is not manifest that the arbitrators acted contrary to the applicable law, the award should be upheld.

Second, where on the basis of the information available to the court it is manifest that the arbitrators acted contrary to the applicable law, the award should be upheld unless it would result in significant injustice, taking into account all the circumstances of the case, including powers of arbitrators to judge norms appropriate to the relations between parties.

*Id.* at 762. Here, TCW fails to meet the first inquiry. It is not manifest that the arbitrators acted contrary to the applicable law,

_____

[3]TCW did not waive this argument, as suggested by Sarofim. TCW expressly opposed the request for punitive damages. That request relied on section 3294.

5

and, therefore, the award must be upheld. We assume without deciding that the arbitration panel "appreciated" the existence of the California punitive damages statute.[4] *Brabham*, 376 F.3d at 381 (holding that, to manifestly disregard the law, arbitrators must have appreciated its existence).

TCW argues that our review is "confined to the four corners of the arbitral award" and that we may not consider evidence from the record which supports the punitive damages award. We disagree. Our cases make clear that we consider all "the information available to the court" on review for manifest disregard. *E.g.*, *Bridas S.A.P.I.C. v. Turkmenistan,* 345 F.3d 347, 363 (5th Cir. 2003); *see also Brabham*, 376 F.3d at 385, 382 n.4 (considering "the facts before the arbitrator" and specifically "an exchange during the arbitration hearing" in rejecting a manifest disregard claim). TCW mistakenly relies on Second Circuit decisions holding that an arbitration award may not be affirmed on legal theories not utilized by the arbitrator. *See, e.g.*, *Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126, 132 (2d Cir. 2003). That principle is inapposite because Sarofim asks, not that we employ a different legal theory than the arbitrators, but that we confirm the award as decided.

As explained by the district court, TCW's argument rests on

___

[4]Sarofim cited section 3294 in her prehearing brief. We need not decide at this time whether one citation is sufficient to prove that an arbitrator "appreciated" the law.

the assertion that its culpability did not exceed simple negligence. While it is true that the panel did not use the exact language of section 3294, the evidence sufficiently supports, under our standard of review, a determination that the award satisfies the statute. *Kergosien*, 390 F.3d at 353 (holding that if an award is "rationally inferable from the facts before the arbitrator, the award must be confirmed"). This is true especially given the form of the panel's decision, a "reasoned award." TCW, as a party to the arbitration, agreed to this type of award rather than requesting specific findings of fact and conclusions of law. TCW cannot now seek vacatur based on the award's lack of specificity.

The panel found that TCW breached its duty to educate itself about Sarofim and to educate Sarofim about investment risks.[5] The panel found that TCW's attempts to educate Sarofim consisted of one or two undocumented telephone calls and one face-to-face meeting. At that meeting, a TCW representative showed Sarofim a graph comparing the Concentrated Core Portfolio with a fund operated by her father-in-law. The panel described the graph as "incomplete, misleading and inflammatory." The panel also noted that a TCW vice president, Sarofim's primary contact with the company, testified that he believed her portfolio was inappropriate from the

---

[5]The record shows that Sarofim knew little about finances. For example, TCW had to explain to her that the brackets around the dollar figures on her account summary indicated financial losses.

beginning.[6]  The panel's final conclusion was that TCW "wholly failed to exercise due diligence."

The panel also considered the investment strategy unsuitable because of its lack of diversification and failure to address Sarofim's liquidity needs.  The panel found that the investments offered no diversification and "would all move in the market in the same direction."  This was revealed in Sarofim's first month of investing with TCW, when her account lost more than $600,000.  The panel did not fault TCW for failing to predict the market downturn, but did fault it for failing to respond.  The panel noted that after repeated periods of loss, TCW's only advice to Sarofim was to "hang in there."  Citing another "glaring example" of problems early in the history of the account, the panel found that TCW invested all of Sarofim's funds, leaving no money to pay taxes known to be due.  As a result, stock had to be sold one month after its purchase.  The panel quipped that the transaction "presumably mean[t] another sales commission was charged."

Despite the absence of the specific terms, the panel's award could be construed as finding "malice" or "fraud" by clear and convincing evidence as defined under section 3294.[7]  The award

---

[6]The vice president testified, "It was overly aggressive for Valerie I felt at the beginning, and I never changed that opinion."  The panel did not accept his argument that although the investments were inappropriate, they were suitable.

[7]TCW argues that the arbitrators "rejected fraud as a foundation for liability," citing the award's focus on TCW's breach of fiduciary duties.  The "reasoned award," however, never made such a rejection.  It did not state a conclusion on the issue.

explains that the actions of the parties "justify" the punitive damages award. Although it does not say that TCW committed "despicable conduct" with "willful and conscious disregard of the rights" of others, the decision contains enough information to infer these things. Cal. Civ. Code § 3294(c) (defining malice). Likewise, within its pages are the underpinnings for a finding of "intentional misrepresentation, deceit, or concealment of a material fact" that "depriv[ed] a person of property." *Id.* (defining fraud). The award along with details in the record support an arbitral determination that TCW's conduct satisfied the requirements of California's punitive damages statute.

This conclusion reflects the great deference we must afford arbitration awards. "Arbitrators need not give reasons for their awards. . . . Uncertainty about arbitrators' reasoning cannot justify vacatur, for a court must resolve all doubts in favor of arbitration." *Brabham*, 376 F.3d at 385 (internal citations omitted). The test we apply requires *manifest* disregard of the law, more than an "error or misunderstanding." *Id*. at 381. TCW has failed to prove such disregard.[8] Given this determination, it

---

[8]TCW makes an extensive argument that this Court has been inconsistent in its application of the two-prong test for manifest disregard, particularly in cases citing Second Circuit precedent. As we review the decisions cited by TCW, we fail to see a contradiction. *See Kergosien*, 390 F.3d at 355; *Brabham*, 376 F.3d at 381–82; *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003). While those cases have clarified and perhaps expanded the *Williams* test, they have done so in an effort to define when it is "manifest that the arbitrators acted contrary to the applicable law."

TCW asks us to examine the academic foundations of the test, suggesting that the scholar

follows that the award does not "strain credulity," as argued by TCW. *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 218 (2d Cir. 2002) ("A court may find intentional disregard if the reasoning supporting the arbitrator's judgment 'strain[s] credulity' or does not rise to the standard of 'barely colorable,' . . . .") (internal citations omitted).

B. The Award Does Not Violate Public Policy

"A court may refuse to enforce an arbitration award that is contrary to public policy." *Prestige Ford*, 324 F.3d at 396. Public policy used to vacate an award "must be explicit, well defined, and dominant." *Id*. (citing *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)). The policy advanced must reference "laws and legal precedents" rather than "general considerations of proposed public interests." *Id.*

TCW argues that the award at issue violates the underlying policy for punitive damages. It cites the relevant California policy as having the goals of "punishing" the wrongdoer and

---

who created the approach did so in an attempt to avoid Second Circuit precedent such as *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir. 1986). *Williams*, however, does not cite this as a reason for adopting the standard. 197 F.3d at 762 (stating that the test "should prove helpful as a basis for articulating and applying the manifest disregard doctrine"). *Williams* cited *Bobker* as an example of a formulation of the doctrine and never rejected its reasoning. *Id.* at 761 n.2; *see also Prestige Ford*, 324 F.3d at 395 (noting that this Court used *Bobker* to describe manifest disregard in a case that predated *Williams*) (citing *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 539 n.1 (5th Cir. 1992)). While the two-prong approach is the starting point in this Circuit, Second Circuit authority remains persuasive.

10

"deterring" others from engaging in similar conduct.  *PPG Indus., Inc. v. Transamerica Ins. Co.*, 975 P.2d 652, 657 (Cal. 1999) (citing Cal. Civ. Code § 3294(a)(stating that a party may recover punitive damages "for the sake of example and by way of punishing the defendant")).[9]  The punitive damages award at issue satisfies these twin aims.  Requiring TCW to pay $2.9 million punishes the company, and the award has the potential to deter entities from engaging in similar behavior.  The award offers enough specifics to caution financial advisers against operating in the same manner as TCW.

In addition, California policy does not limit punitive damages awards in arbitration, even if those awards are contrary to "procedural or substantive law imposed by statute and judicial interpretations."  *Rifkind & Sterling, Inc. v. Rifkind*, 33 Cal. Rptr. 2d, 828, 833 (Cal. Ct. App. 1994).  Indeed, arbitrators in California, "unless specifically required to act in conformity with rules of law, may base their decision[s] upon broad principles of justice and equity, and in so doing expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action."  *Moncharsh v. Heily & Blase*, 832 P.2d 899, 904 (Cal.

---

[9]TCW also alleges that the award violates "national" public policy.  In its only effort to define this policy, it cites *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–86 (1996).  This case, however, concerns the constitutionality of the amount of punitive damages rather than the justification for punitive damages.  Given that TCW does not adequately define a "national" public policy, the claim fails.  We note that the California policy is sufficient for examining the issue.

1992).  These cases show that California public policy also includes an exceedingly deferential standard for punitive damages awarded in an arbitration.[10]  This is further evidence that the award at issue does not violate public policy.


VI.  CONCLUSION

In awarding punitive damages, the arbitration panel did not manifestly disregard applicable law and did not violate public policy.  For these reasons, we AFFIRM.

---

[10]This policy does not affect our inquiry in Section IIA.  The Federal Arbitration Act ("FAA") and interpretative cases from this Circuit provide the rules of decision on when to vacate an award.  While language in the investment agreements incorporate California substantive law into this dispute, the language does not replace the requirements for opting out of vacatur rules. *See Action Indus.*, 358 F.3d at 341, 342 (holding that contractual language required to opt out of the FAA must be "clear and unambiguous" and that broad choice-of-law language did not express the necessary intent to opt out).  Manifest disregard of the law is a ground for vacating an arbitration decision in this Circuit regardless of California's view on the issue.