United States Court of Appeals
Fifth Circuit

**F I L E D**

April 19, 2007

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 06-30929
Summary Calendar

RELIANCE NATIONAL INSURANCE COMPANY, (In Liquidation) as Subrogee
of Ener Vest Energy LP and Ener Vest Management Partners, Ltd, Successor in
interest to Ener Vest Management Company,

Plaintiff-Appellant,

versus

TEXACO EXPLORATION AND PRODUCTION, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
Civil District No.: 2:05-cv-02508-ILRL-SS

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment, dismissing Reliance

National Insurance Company's ("Reliance") complaint to vacate an arbitration panel's judgment. We

affirm the district court's judgment.

_____

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

In February 2000, Enervest Management Company ("Enervest") purchased the Bateman Lake Lease in Berwick, Louisiana from Texaco Exploration and Production, Inc. ("Texaco") pursuant to a Purchase Sale Agreement (the "Agreement").  The Agreement required the parties to participate in an arbitration of all disputes arising out of the sale.  Texaco also required Enervest to procure insurance naming Texaco as an additional insured.  On April 20, 2000, Enervest discovered a leak from a pipeline and sought contribution from Texaco for the environment clean-up costs.  To cover the expense, Texaco permitted Enervest to draw on an escrow account funded by Enervest for Plugging and Abandonment liabilities.

Enervest's insurer, Reliance, paid a claim for the clean-up costs.  In November 2002, Reliance sought subrogation under its Comprehensive General Liability ("CGL") policy.  Texaco refused to subrogate the costs.  Texaco and Reliant submitted the dispute to an arbitration panel.  The parties requested the panel to determine whether Texaco owed Reliance for the environmental clean-up of the Bateman Lake property.  Both Texaco and Reliance submitted documentary evidence and initial position papers.  Based on the contracts and arguments of the parties, the Panel concluded that Texaco was an additional insured under the CGL policy.  Therefore, Reliance could not recover from Texaco, and the panel summarily dismissed the matter.

On June 20, 2005, Reliance filed a lawsuit in federal district court to vacate the arbitration panel's judgment.  Reliance argued that the arbitration panel dismissed the dispute on an issue not properly before the panel for consideration.  Texaco moved for summary judgment based on the lack

of evidence and the deference given to arbitral judgments. On July 26, 2006, the district court dismissed the suit with prejudice.

## II. STANDARD OF REVIEW

We review de novo the district court's judgment, applying the same standards as the district court. *Sarofim v. Trust Co. Of the West*, 440 F.3d 214, 216 (5th Cir. 2006). In deciding a motion for summary judgment, the court must determine whether the submissions show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hart v. Hariston*, 343 F.3d 762, 764 (5th Cir. 2003). In deciding whether a fact issue has been created, the facts and inferences must be reviewed in the light most favorable to the nonmoving party. *Reeves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

## III. DISCUSSION

Reliance argues that the panel substantially prejudiced its rights by deciding an issue not submitted for determination, denying Reliance the opportunity to address the issue. Moreover, the panel prohibited Reliance from conducting adequate discovery, which resulted in it refusing to hear "evidence material to the controversy." Texaco counters that based on the submitted contracts and initial position papers, the parties explicitly charged the panel to interpret the Agreement, the CGL policy, and their respective endorsements and attachments. The arguments and evidence before the arbitration panel expressly raised the question of Texaco's status as an additional insured under the CGL policy. The panel decided the matter based on a contractual provision contained within documents submitted by Reliance and identified by Texaco in its initial position paper. Moreover,

3

despite notice of the panel's intention to summarily dismiss the dispute, Reliance entered no additional evidence.

The dispute resolution clause reads as follows:

> The Parties agree that an award made by the Panel may be vacated by a court only if the award was procured by or through fraud or corruption or because the Panel refused to hear evidence material to the controversy or otherwise so conducted the hearing as to substantially prejudice the rights of a Party.

On December 8, 2004, the arbitration panel requested that Texaco and Reliance submit a "statement of the issues in the case, the relevant background, and any other matters deemed to be of importance in the resolution of the dispute." On January 3, 2005, Reliance provided an initial position paper setting forth its legal arguments along with the Agreement and its amendments. Reliance's "Causes of Action" section begins with a description of its breach of contract claim and arguing pursuant to selected provisions. Shortly thereafter, Texaco responded to Reliance's arguments, relying on the additional insured provision as a basis for summary dismissal. The relevant passage of Texaco's initial position paper reads as follows:

> PSA Section 4.2(j) obligates Enervest to procure insurance that waives all rights of subrogation against Texaco and name[s] Texaco as an additional insured. In Endorsement CL 641 of the CGL policy (*Attached hereto as Exhibit H . . .* ), Reliance expressly waives its right of subrogation. . . . Considering these fundamental principles of insurance and subrogation law, this matter may be disposed of summarily before a great deal of time and resources are needlessly consumed.

Texaco's arguments in its position paper undercut Reliance's assertion on appeal that the issue was not before the arbitration panel. Moreover, the panel could not consider in isolation the provisions cited by Reliance's position paper. A legal analysis of the issue inherently required a review of the entire contract.

4

After receiving the initial position papers, the arbitration panel invited counsel for Reliance to "respond to the January 18 position paper by Chevron Texaco at any time within fifteen days from receipt of this letter, if desired." The panel received no additional arguments or documentary evidence from Reliance. In a letter dated March 28, 2005, the panel once again invited Reliance's counsel to submit additional information and advised of the panel's intended course of action. The March 28 letter stated that

> The deadline has now passed to file with the arbitrator further written submissions or a request for oral argument. The purpose of this letter is to advise that absent any further submission from you within ten days, the Panel will consider that the matter has been submitted on the information previously received and it will proceed to address the preliminary issue in question.

Reliance provided no further argument or evidence in response to this second letter. Based on the panel's diligence in providing Reliance the opportunity to respond to Texaco's arguments, even extending the deadline, we conclude that a genuine issue of material fact does not exist as to whether the panel "refused to hear evidence material to the controversy" or "conducted the hearing so as to substantially prejudice the rights" of either party.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.