**AFFIRM; and Opinion Filed May 8, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-14-01260-CV
_____

### MOVIE POSTER HOUSE, INC., Appellant
### V.
### HERITAGE AUCTIONS, INC., Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-11040**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Francis

Movie Poster House, Inc. appeals the trial court's summary judgment in favor of Heritage Auctions, Inc. In four issues, MPH contends the trial court erred because its claims are not barred by res judicata or collateral estoppel and the arbitrator abused his discretion by refusing to allow MPH to amend its statement of claims. We affirm.

In early 2008, Kenneth Mauer loaned William Hughes over $600,000 that was secured by artwork, coins, movie posters, sports memorabilia, and other collectibles owned by Hughes. Mauer perfected his security interest by filing a UCC-1 of the various items with the Texas Secretary of State. At the time, Hughes also held 50% ownership in MPH and was an officer and director in the company. When Hughes defaulted on his loan obligations, Mauer obtained a judgment against him for over $730,000. Mauer then filed an application for writ of garnishment against Heritage because Hughes regularly bought and sold artwork, coins, movie posters, sports

memorabilia, and other collectibles through Heritage and Hughes believed Heritage held many of the items secured by his UCC-1 security interest. Heritage filed its answer, alleging that any interest Hughes had in the collateral had been consumed by charges due Heritage. After a subsequent audit determined Heritage had engaged in a "systematic pattern of overcharging and other wrongful conduct," Mauer sued Heritage in November 2009 for various causes of action, including fraud and civil conspiracy.

On May 23, 2012, MPH filed a petition in intervention, alleging that "[a]mong the specific goods purportedly 'pledged' to Heritage by Hughes was memorabilia actually belonging to MPH." MPH sought (1) an accounting, including asking Heritage to identify any MPH property it held but had not sold and (2) in the event Heritage had collected proceeds that had not been tendered to MPH, a credit to MPH's account for that amount. In response, Heritage filed an application to compel arbitration, noting that MPH had signed an Auction Consignment Agreement in November 2008 which contained a "valid, enforceable, and eminently fair arbitration agreement and all of its claims [fell] within its scope." On June 5, 2012, the trial court granted Heritage's request and ordered "the dispute" between Heritage and MPH to arbitration.

On January 28, 2013, MPH filed its detailed statement of claims with the arbitrator, asking for an accounting and a declaration that the pledge language in the November 2007 agreement between Heritage and Hughes was ineffective to grant Heritage a security interest in either Hughes's shares of MPH stock or in the inventory MPH had consigned previously to Heritage. Several months later, MPH filed, without the arbitrator's consent or approval, an untimely amended statement of claims asserting six new causes of action for damages, including breach of contract and a claim for missing and/or damaged inventory. The arbitrator struck the

amended claims but stated that, at the evidentiary hearing set for July 2013, he would address the propriety of allowing MPH to proceed with the claims.

Following the July hearing and a subsequent September 11, 2013 telephone hearing, the arbitrator ruled:

- the pledge language in the Hughes-Heritage agreement was ineffective to provide Heritage with a valid security interest in either Hughes's shares of MPH stock or in the inventory MPH had consigned previously to Heritage;

- there was no legally enforceable agreement between MPH and Heritage that would allow Heritage to apply proceeds from the sales of MPH-consigned inventory to pay down Hughes's debt to Heritage;

- Heritage's contractual statute of limitations defense failed because of the doctrine of fraudulent concealment.

The arbitrator also determined Heritage was legally obligated to remit $29,949.46 to MPH: $23,078.90 from sales of MPH-consigned inventory that had been used to offset Hughes's debt to Heritage and $6,870.56 in proceeds that had not been applied to any account. And the arbitrator awarded MPH $70,000 for its reasonable attorney's fees and costs in connection with the arbitration proceeding.

The arbitrator then addressed why he denied MPH's request to assert "multiple causes of action for damages based on Heritage's retention of proceeds that should have been paid to [MPH] and to assert a claim, based on Heritage's breach of contract, that the parties' Auction Consignment Agreement be declared terminated and that [MPH's] consigned inventory be ordered returned to it." The basis for these claims was that Heritage failed to pay MPH the $29,949.46 in sale proceeds when it was legally required to do so. The arbitrator noted that in April 2012, before the arbitration proceeding began, principals of Heritage told representatives of MPH that Heritage had begun applying proceeds from the sale of MPH inventory to offset Hughes's debt. The arbitrator concluded MPH knew or should have known of the misappropriation of funds in April 2012 and could have asserted such claims in its original

–3–

demand for arbitration or in its January 2013 statement of claims. With respect to MPH's proposed claim for missing or damaged inventory, the arbitrator noted MPH physically inspected its inventory consigned with Heritage in December 2012. Thus, MPH should have determined or known during that inspection or as a result of that inspection if any of the consigned inventory was missing or damaged and should have included any claims addressing the same in its January 2013 statement of claims. Finally, the arbitrator stated that in light of the evidence adduced at the July 15 and 16 hearing, it was unlikely MPH could show conduct on the part of Heritage sufficiently culpable to entitle MPH to additional or punitive damages under the Texas Deceptive Trade Practices and Consumer Protection Act, and MPH had been "made whole for its out of pocket loss by [the] award to it of $29,949.46." There was no appeal of the arbitration award.

MPH then filed an amended petition in district court, incorporating the arbitration award and asserting new causes of action for breach of contract, conversion, theft of property, violations of the DTPA, common law fraud, and fraud by nondisclosure. Heritage filed an answer and a traditional motion for summary judgment, asserting MPH's claims in the amended petition were barred by res judicata and/or collateral estoppel. The trial court granted Heritage's summary judgment motion without specifying the grounds and dismissed MPH's claims. This appeal followed.

We begin with MPH's argument that the arbitrator abused his discretion by refusing to allow MPH to amend its statement of claims during arbitration.

The parties' consignment agreement provided they would arbitrate under the Federal Arbitration Act. Under the FAA, an arbitration award is presumed to be valid, and judicial review is "exceedingly deferential" and "extraordinarily narrow." *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407−08 (Tex. App.—Dallas 2007, no pet.) (citing *Sarofim v. Trust Co.*, 440 F.3d 213, 216 (5th Cir. 2006)). The statutory bases for vacating an arbitration award are outlined

in the FAA. *See* 9 U.S.C. §§ 10-11. Refusal to allow an amendment of claims is not one of the statutory grounds for vacating an award. *See id.* "Under the FAA, the validity of an arbitration award is subject to attack only on the grounds listed in sections 10 and 11 of the Act." *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 805−06 (Tex. App—Dallas 2008, pet. denied).

Here, MPH complains the arbitrator should have allowed the company to file an amended statement of claims. Notably, MPH does not challenge the arbitration award or seek to vacate it. Because MPH does not raise a statutory ground to vacate or modify the award, we dismiss this issue.

In its remaining issues, MPH claims the trial court erred by granting summary judgment on the grounds of res judicata or collateral estoppel.

We review the granting of a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The party relying on the affirmative defense of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). "The judgment in the first suit precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit." *Travelers Ins. Co.*, 315 S.W.3d at 862. What constitutes the subject matter of a suit requires an examination of the factual basis of the claim or claims in the prior litigation as well as an analysis of the factual matters making up the gist of the complaint. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992). "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id.* (citing *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)). Here, the parties are identical, and there is a prior final

determination on the merits by a court of competent jurisdiction. *See Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.) (arbitration award is treated the same as the judgment of a court of last resort). Thus, the only issue is whether the causes of action MPH sought to raise arose out of the same set of facts as addressed in the arbitration.

The record shows that, in February 2014, MPH sought to amend its pleadings to include claims for breach of contract, conversion, theft of property, violations of the DTPA, common law fraud, and fraud by nondisclosure. However, these claims arose out of the same set of facts that formed the basis for MPH's previous claims: Mauer obtained a judgment against Hughes and sought to recover items held under the security agreement; Heritage claimed all the interest Hughes had in any collateral had been consumed by charges due Heritage; an audit showed Heritage had a "systematic pattern of overcharging and other wrongful conduct;" and MPH sought to protect its inventory and received credit for any proceeds from sales of its inventory. MPH's amended claims arose out of the same facts, and therefore were barred by res judicata. *See Barr*, 837 S.W.2d at 631. We overrule MPH's first and second issues. In light of our disposition of these issues, we need not address the third issue regarding collateral estoppel. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

141260F.P05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MOVIE POSTER HOUSE, INC., Appellant

No. 05-14-01260-CV      V.

HERITAGE AUCTIONS, INC., Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-11040.
Opinion delivered by Justice Francis, Justices Lang-Miers and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee HERITAGE AUCTIONS, INC. recover {his/her/its/their} costs of this appeal from appellant MOVIE POSTER HOUSE, INC..

Judgment entered this 8th day of May, 2015.