ALDERMAN AND ALDERMAN *v.* RONALD POLLACK

RONALD POLLACK *v.* ALDERMAN AND ALDERMAN
(AC 26679)

Flynn, C. J., and Lavine and Foti, Js.

Argued September 18, 2006—officially released March 20, 2007

*Daniel J. Klau,* for the appellant (plaintiff in the first case, defendant in the second case).

*David L. Thompson,* for the appellee (defendant in the first case, plaintiff in the second case).

*Opinion*

FLYNN, C. J. The law firm of Alderman & Alderman (Alderman) appeals from the judgments of the trial court denying its application to vacate an arbitration award and confirming the award of $11,000 in favor of its former client, Ronald Pollack. On appeal, Alderman claims that the court should have vacated the award because the arbitrators (1) exceeded their authority by granting Pollack a refund, which went beyond the scope of the parties' submission, and (2) violated an agreed upon rule of arbitration by setting forth findings in their written decision. We affirm the judgments of the trial court.

The following facts, as set forth by the trial court, are relevant to our resolution of the issues on appeal. "These cases are the result of a fee dispute between the plaintiff law firm and the defendant, its former client. Between 1999 and 2001, [Alderman] represented [Pollack] in matters before the Superior Court and the

department of environmental protection. [Alderman] billed [Pollack] a total of $52,806.22 for legal fees, costs and expenses. [Pollack] failed to pay $23,005.35 of the amount billed. [Alderman] filed suit against [Pollack] in January, 2002, to collect the sums in question. On March 25, 2003, [Alderman] withdrew the collection action because the parties had agreed to submit their dispute to the Legal Fee Resolution Board of the Connecticut Bar Association. The dispute was submitted to the Board for binding arbitration. The Board's panel of three arbitrators issued its decision on November 14, 2003. The net result of the award was that [Alderman] was ordered to refund $11,000 of the fees paid by [Pollack]."

On December 18, 2003, Alderman submitted a timely application to the court, requesting an order vacating the arbitration award specifically on the grounds that "the arbitrators exceeded their powers and/or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made, and because the award was procured by corruption, fraud and undue means."

On June 14, 2004, Pollack submitted a timely application requesting an order confirming the arbitration award, and, on April 5, 2005, these cases were consolidated by the trial court. The parties agreed to submit the cases to the court on their briefs and stipulated to the admission of certain exhibits. The court issued a memorandum of decision on June 10, 2005, in which it rendered judgment denying Alderman's application to vacate the arbitration award and granting Pollack's application to confirm the award. Alderman appeals from that judgment.

Our review is guided both by case law and statute. "A submission to arbitration, sometimes referred to as an agreement for submission, is a contract . . .

whereby two or more parties agree to settle their respective legal rights and duties by referring the disputed matters to a third party, by whose decision they agree to be bound. . . . Technical precision in making a submission is not required and submissions are given a liberal construction in furtherance of the policy of deciding disputes by arbitration and in light of the surrounding facts and circumstance." 4 Am. Jur. 2d 143, Alternative Dispute Resolution § 85 (1995). "A submission to arbitrate must embrace everything necessary to give the arbitrators jurisdiction over the parties and the matter in dispute . . . . Since the award is limited by the submission, the submission agreement should show clearly what disputes are to be arbitrated. However, it will be presumed that the parties intended to grant to the arbitrators such powers as are reasonably necessary to settle the dispute fully." Id., 144, § 86.

"Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . .

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision. . . .

"Even in the case of an unrestricted submission, [our Supreme Court has] recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418."[1] (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and

---

[1] General Statutes § 52-418 (a) closely resembles § 23 (a) of the Revised Uniform Arbitration Act, which provides: "Upon [motion] to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if: (1) the award was procured by corruption, fraud, or other undue means; (2) there was: (A) evident partiality by an arbitrator appointed as a neutral arbitrator; (B) corruption by an arbitrator; or (C) misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding; (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to Section 15, so as to prejudice substantially the rights of a party to the arbitration proceeding; (4) an arbitrator exceeded the arbitrator's powers; (5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under Section 15 (c) not later than the beginning of the arbitration hearing; or (6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in Section 9 so as to prejudice substantially the rights of a party to the arbitration proceeding." Revised Uniform Arbitration Act § 23 (a).

Although Connecticut did not adopt the Uniform Arbitration Act, first promulgated in 1925, "chapter 909 was first enacted as chapter 65 of the Public Acts of 1929 and, with some changes, was taken from the Uniform Arbitration Act . . . ." *Marsala* v. *Valve Corp. of America*, 157 Conn. 362, 366, 254 A.2d 469 (1969).

material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." With these principles in mind, we turn to Alderman's claims on appeal.

## I

Alderman first claims that the court should have vacated the arbitration award because the arbitrators exceeded the scope of the parties' submission. More specifically, Alderman argues that Pollack did not file a counterclaim requesting recovery of legal fees already paid, and, therefore, the award, giving Pollack an $11,000 refund, exceeded the scope of the parties' submission. Alderman further argues that the submission was restricted to an award in an amount between $0 and $23,005.35. We do not agree.

In determining whether a submission is unrestricted, we look at the authority of the arbitrator. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." *Garrity* v. *McCaskey*, 223 Conn. 1, 5, 612 A.2d 742 (1992); *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983). In the present case, the agreement does not limit or condition the arbitrators' authority in a manner that would make this a restricted submission. Thus, we conclude that the submission is unrestricted and our review, therefore, is limited.

The parties agreed to submit their legal fee dispute to the Connecticut Bar Association's Committee on the Resolution of Legal Fee Disputes (committee), which

has "jurisdiction over any disagreement concerning the fee or retainer paid, charged, or claimed for legal services rendered by a lawyer who practices law in the State of Connecticut . . . where there exists an express or implied contract establishing an attorney-client relationship and the lawyer and the person, or law firm, allegedly liable for the payment or repayment of the fee or retainer in dispute submits to the jurisdiction of the committee and agrees that the dispute shall be resolved through [one or more specified procedures] . . . ." Connecticut Bar Association, Rules Resolution of Legal Fee Disputes Program, § IV. The parties agreed that this dispute would be settled by the procedures set forth in the binding arbitration program rules of the committee. Section V of the committee's rules provides that a petition for binding arbitration may be filed by an attorney or by a client. Id., § V (1). After receiving a petition, the committee sends a copy of the petition and the committee's rules to the respondent and awaits a response. Id., § V (2). If the respondent fails to respond or refuses to submit to the committee's jurisdiction within thirty days, the petition is closed and the petitioner is notified in writing. Id., § V (8). On the other hand, if the respondent consents to the committee's jurisdiction and agrees to have the fee dispute heard by an arbitration panel in accordance with the committee's rules, a response is filed, a panel is appointed and hearings are commenced, unless the parties agree to waive hearings and have the matter decided on written submissions only. Id., § V (3) through (5). "All decisions or awards of the arbitration panels shall be made in writing and returned to the office of the Connecticut Bar Association by the panel chair within fourteen (14) days after the conclusion of the hearing . . . . The Connecticut Bar Association shall forward notice of the award to the parties." Id., § V (7).

Alderman's petition for resolution of the fee dispute alleged that "[t]he total amount of legal fees charged

was $52,806.22" and that the portion of legal fees still in dispute was $23,005.35. Alderman's petition also contained a statement of facts, some representations, acknowledgements and agreements.

Pollack's agreement to arbitrate set forth the following in response to Alderman's petition: "The total amount of legal fees . . . was $52,806.22 charged [and] $23,005.35 claimed." The agreement also set forth a statement of facts in which Pollack, inter alia, concluded by stating: *"Mr. Pollack's claim* is that the fee is excessive and unreasonable, and [Alderman is] in breach of the retainer agreements, and as to the lead paint case [the fees] are excessive considering the result obtained. In addition, there were instances of overbilling, double billing or billing at uncertain rates . . . ." (Emphasis added.)

Clearly, both parties agreed that the amount of legal fees charged was $52,806.22 and that there remained an unpaid balance of $23,005.35. Alderman claims that the arbitrators had the authority to render an award in an amount between $0 and $23,005.35 and that they exceeded the scope of the submission by granting Pollack an $11,000 refund of fees not in dispute. In response, Pollack argues that, although he did not file a counterclaim, the entire fee was in issue, not just the balance allegedly due, and he specifically had claimed in his agreement to arbitrate that the fees charged were excessive, unreasonable, and in breach of the retainer agreements and that he had been overbilled and double billed. We agree with Pollack that the submission was unrestricted and that the committee was to decide what was the proper fee for Alderman's legal services to Pollack.

In support of its claim, Alderman relies on *Slez* v. *Oliger*, Superior Court, judicial district of Fairfield, Docket No. 321418 (November 22, 1995) (*Levin, J.*),

in which Judge Levin vacated an arbitration award for being beyond the scope of the parties' submission. In *Slez*, the clients had alleged that "the total amount of the legal fees charged by [the attorney] was $334,418.17, and that the amount of the legal fees in dispute before the [arbitrator] was up to $75,000.00." (Internal quotation marks omitted.) Id. The arbitrator, however, awarded the clients $95,097.72. Id. Vacating the award, Judge Levin explained: "While it could have been worded otherwise, the [clients'] petition, which is the submission since it is what [the attorney] agreed to arbitrate, states: 'b. What amount of legal fees charged is in dispute? $ up to $75,000.' Thus, only 'fees' were in dispute and only 'up to $75,000.' It may be said with positive and mathematical assurance that an award of $95,000 is not within the ambit of an arbitration agreement which provided that what was in dispute were 'fees . . . up to $75,000.' The arbitrators exceeded their powers because they rendered an award that was beyond the scope of the submission." Id.

We conclude that the present case readily is distinguishable from *Slez*. Alderman submitted a petition for arbitration that specifically claimed that the "total amount of legal fees charged was $52,806.22" and the "portion of the legal fees . . . in dispute [was] $23,005.35." Pollack submitted an agreement in response to this petition that specifically stated: "The total amount of legal fees . . . was $52,806.22 charged [and] $23,005.35 claimed." He then went on to allege excessiveness in billing, overbilling, double billing, unreasonableness and breaches of the legal retainer agreements. The parties' agreements, taken together, simply do not contain the limitations on the submission that were present in the *Slez* case. Alderman claimed that $23,005.35 was due; Pollack acknowledged that Alderman was claiming that $23,005.35 was due, but he also raised issues concerning the entire fee charged.

Pollack did not agree to limit the submission to an amount between $0 and $23,005.35, nor did Alderman make such a restriction on the authority of the arbitrators.

Accordingly, we conclude that the submission was not restricted to an amount between $0 and $23,005.35. "In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission." (Internal quotation marks omitted.) *Lathuras* v. *Shoreline Dental Care, LLC,* 65 Conn. App. 509, 512, 783 A.2d 83, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001). After examining the submission and the award in this case, we conclude that the award of an $11,000 refund to Pollack was within the authority of the arbitrators and in conformance with the submission.

## II

Alderman next claims that the arbitrators violated rule VII (4) of the committee's rules by including factual findings in the award and that this warrants vacatur of the award pursuant to General Statutes §§ 52-418 (a) (3) and (4).[2] Alderman argues: "Rule VII (4) provides

[2] On appeal, Alderman does not claim or argue that the arbitrators exceeded the parties' submission by violating rule VII (4). During oral argument Alderman explained that its claims on appeal were distinct: (1) the award did not conform to the submission and (2) the decision contained findings in violation of a substantive rule of arbitration. More specifically, the following occurred during oral argument:

"[Alderman's Counsel]: Our argument is that this rule, rule VII (4), is a substantive rule governing this arbitration and that the arbitrators exceeded their authority by rendering an award that had written findings in it. . . .

"Judge Foti: Do you also argue that—that the award does not conform to the submission?

[Alderman's Counsel]: That—yes, that is a separate issue.

"Judge Foti: Separate?

"[Alderman's Counsel]: Yes, Your Honor. If you'd like, I will address that right now.

"Judge Foti: No, I'm just—I'm just saying . . . .

"Judge Flynn: Well, could you, with respect to these rules—

"[Alderman's Counsel]: Yes, Your Honor. But as Judge Foti said, we have

that an arbitration award 'shall state *only* the amount of the Award, if any, and terms of payment, if applicable.' The arbitrators were either unaware of this rule, or they consciously ignored it . . . . The arbitrators' arguably deliberate indifference to rule VII (4), which indifference the trial court erroneously sanctioned, constitutes a separate and independent ground for vacating the Award."

Pollack argues that although the rule states that *the award* shall state only the amount of the award and the terms of payment, there is nothing that prohibits the arbitrators from issuing *a decision* that includes findings, and, in this case, the arbitrators clearly issued a decision that included separate sections delineated as "findings" and separate sections delineated as "award." He argues that this does not violate rule VII (4).

In the alternative, Pollack argues that if we conclude that the separate sections of the decision setting forth the findings are in contravention of rule VII (4), we could vacate those parts of the decision and not disturb the merits of the award.[3] Alderman argues that this

---

two distinct and independent grounds for seeking vacatur in this case.

"Judge Flynn: We understand that. . . . But, I'm trying to get to the second part of this argument as to which rules you want to focus us on.

"[Alderman's Counsel]: Okay. Our argument that the award does not conform to the submission is not an argument that arises from the CBA's published rules."

[3] In *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955), our Supreme Court explained that "if part of an award is within the submission and part of it is not, the former may be sustained and the latter rejected if the two can be separated without doing an injustice." Id., 614. "The means by which [arbitrators] have come to [their] conclusion, the reasoning or the principles on which they base it are, unless the submission otherwise requires, needless and surplusage." W. Sturges, Commercial Arbitrations and Awards (1930) § 223, p. 533, quoting *In re Curtis-Castle Arbitration*, 64 Conn. 501, 513, 30 A. 769 (1894).

General Statutes § 52-419 also provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in

alternative is unacceptable because the findings, which should have been confidential, already have been disclosed and, "[a]s the saying goes, the toothpaste cannot be put back into the tube." Accordingly, it argues, the only just remedy is to vacate the award in its entirety.

"The scope of judicial review of arbitration awards is very narrow. Our courts favor arbitration as a means of settling differences and uphold the finality of arbitration awards except where an award clearly falls within the proscriptions of § 52-418 of the General Statutes. . . . [A]ny challenge to an award . . . on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . If the award conforms to the submission, the arbitrators have not exceeded their powers." (Internal quotation marks omitted.) *Green* v. *Connecticut Disposal Service, Inc.*, 62 Conn. App. 83, 97–98, 771 A.2d 137, cert. denied, 256 Conn. 912, 772 A.2d 1124 (2001).

Rule VII (4) of the Resolution of Legal Fee Disputes Program specifically states: "The arbitration *decision* shall be made by a majority of the arbitration panel. The *award* shall be in writing and signed by members concurring therein. It shall state only the amount of the award, if any, and the terms of payment, if applicable." (Emphasis added.) Connecticut Bar Association, Resolution of Legal Fee Disputes Program Rules, § VII (4).

---

session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

The decision of the arbitrators is a three page document entitled "IN PROCEEDINGS BEFORE THE LEGAL FEE ARBITRATION BOARD OF THE CONNECTICUT BAR ASSOCIATION—AWARD OF ARBITRATORS," followed by the case number and the case name. The decision then sets forth a section entitled: "Findings," related to the legal fees in one of the cases, in which Alderman had defended Pollack on allegations of exposure to lead paint. This is followed by a section entitled: "Award," which specifically states: "The panel finds the issues on this claim for [Pollack] and orders [Alderman] to refund $19,000."

The decision next contains a section entitled: "Findings," related to the second case, in which Alderman had represented Pollack on a claim for reimbursement for the removal of an underground storage tank. This is followed by another section entitled: "Award," which states: "The panel finds the claim for [Alderman] in the amount of $8,000." The last part of the decision contains a section entitled: "Total Net Award," which states: "The panel finds that [Alderman] shall refund fees charged in the amount of $11,000," followed by the statement: "This award is in full settlement of all claims submitted to this arbitration." The end of the decision contains the date of November 14, 2003, and the names and signatures of the three arbitrators.

In its memorandum of decision, the trial court found that the form and content of the decision did not require a vacatur: "It is . . . far from clear to the court that the arbitrators did anything improper by explaining the basis for their decision. The 'awards' simply say which party gets how much. 'Findings' are expressed relegated to separate and distinct parts of the document. Nothing in the [Connecticut Bar Association] rules precludes its arbitrators from issuing findings at the same time that they enter awards." We are not convinced that this reasoning was flawed. Although Alderman argues that

the entire decision of the arbitrators is, in effect, the "award" and that it can contain *only* a dollar amount and the term of payment if it is to comply with rule VII (4), clearly other things necessarily must be part of this document, i.e., the date, the names of arbitrators, the names of the parties and a file number, to name some of those things. Unquestionably, rule VII (4) explicitly states that "[t]he *award* shall be in writing and signed by members concurring therein [and] [i]t shall state only the amount of the award, if any, and the terms of payment, if applicable." (Emphasis added.) The rule, however, also states that "[t]he arbitration *decision* shall be made by a majority of the arbitration panel." Moreover, nowhere in the rules do they state that the award shall be the only thing contained in the written *decision* of the arbitrators. Additionally, we note that rule V (7), provides: "All *decisions or awards* of the arbitration panels shall be made in writing and returned to the office of the Connecticut Bar Association by the panel chair within fourteen (14) days after the conclusion of the hearing, except in a case where there are exceptional or unusual conditions. The Connecticut Bar Association shall forward notice of the award to the parties." (Emphasis added.) This rule seems to contemplate that there may be a written decision *or* a written award.

Our law is very clear: "Every reasonable presumption and intendment will be made in favor of the award . . . . Hence, the burden rests on the [challenging party] to produce evidence sufficient to invalidate or avoid it." *Gary Excavating Co.* v. *North Haven*, 160 Conn. 411, 413, 279 A.2d 543 (1971). After reviewing the record before us, we simply are not convinced that the rules of Connecticut Bar Association's Resolution of Legal Fee Disputes Program prohibit an arbitration panel from issuing a reasoned decision, i.e., one that

contains findings.[4] Certainly, we readily acknowledge that permitting a reasoned "decision" appears to be at cross purposes with rule VII (4)'s prohibition on "awards" stating anything other than the "amount of the award, if any, and the terms of payment." However, because the rules refer both to "decisions" and to "awards," and do not explicitly prohibit a reasoned "decision," we are unable to find error. Perhaps the rules require some rewriting for purposes of clarification; but we are not the appropriate body to make such a revision.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[4] "A 'reasoned award' means that findings of fact and conclusions of law supporting the ultimate award rendered are stated in the award or in a supporting memorandum." 21 S. Williston, Law of Contracts (4th Ed. Lord 2001) § 57:107, pp. 565–66.