******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SBD KITCHENS, LLC *v.* BRETT JEFFERSON ET AL.
(AC 36411)

BRETT JEFFERSON ET AL. *v.* SBD KITCHENS, LLC
(AC 36412)
(AC 36613)

Gruendel, Lavine and Borden, Js.

*Argued December 10, 2014—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodator, J.)

*Ethan A. Brecher*, with whom, on the brief, was *Ana
M. Montoya*, for the appellants-appellees (defendants
in the first case, plaintiffs in the second case).

*James C. Riley*, with whom, on the brief, was *Thomas
P. O'Connor*, for the appellee-appellant (plaintiff in the
first case, defendant in the second case).

*Opinion*

BORDEN, J. These three appeals arise out of an arbitration proceeding. In the first two consolidated appeals, AC 36411 and AC 36412, the defendants, Brett Jefferson and Catherine Jefferson, appeal from the trial court's judgment confirming the arbitrator's award of punitive damages to the plaintiff, SBD Kitchens, LLC, claiming that the award was made in manifest disregard of the law.[1] In the third appeal, AC 36613, the plaintiff claims that the trial court improperly denied its motion for attorney's fees incurred in the subsequent court proceedings. We affirm the judgments of the trial court.

These claims arose out of work that the plaintiff performed at the home of the defendants, and the defendants' creation and maintenance of a website criticizing the quality of that work. The defendants commenced an action against the plaintiff, claiming, inter alia, breach of contract and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (contract action). The plaintiff filed a demand for arbitration with the American Arbitration Association in accordance with the parties' written agreement and filed an application in the trial court under a separate docket number for an order compelling arbitration (arbitration action).[2] The plaintiff alleged breach of contract and defamation and sought compensatory and punitive damages, as well as injunctive relief. The court, *Hon. Taggart Adams*, judge trial referee, ordered all of the parties' various claims to be arbitrated.

Before the arbitrator,[3] the plaintiff alleged breach of contract on the basis of the defendants' failure to pay the final invoice for the work performed by it in the defendants' residence. The plaintiff also claimed it was defamed by an Internet website created and maintained by the defendants, and sought compensatory and punitive damages as well as injunctive relief. The defendants raised various related defenses and counterclaims.[4] The arbitrator found for the defendants on the plaintiff's breach of contract claim, and found for the plaintiff on the defendants' counterclaims. The arbitrator also found for the plaintiff on its defamation claim, and awarded the plaintiff compensatory damages in the amount of $25,000, and punitive damages, consisting of attorney's fees and costs allocable to the defamation claim, in the amount of $166,038.89, as well as certain injunctive relief regarding the website.

The plaintiff applied to the trial court to confirm the award. The defendants filed two applications: one, to confirm that part of the award denying the plaintiff's breach of contract claim; and the second, to vacate the award of punitive damages. The court, *Povodator, J.*, granted the plaintiff's application to confirm the award, granted the defendants' first application, namely, to confirm that part of the award denying the plaintiff's

breach of contract claim, and denied the defendants' second application, namely, to vacate the award of punitive damages. Thereafter, the plaintiff filed a motion for attorney's fees, which the court denied. These appeals followed.

I

In the first two appeals, AC 36411 and AC 36412, the defendants raise only one claim: the arbitrator's award of punitive damages was made in manifest disregard of the law. We disagree and, accordingly, affirm the judgment of the trial court confirming the award of punitive damages to the plaintiff.

Certain facts relevant to this appeal are undisputed. The plaintiff, owned by Sarah Blank and her husband, Charles Karas, is a small business engaged in the installation of kitchens and other residential home projects. The defendants own a home at 225 Tokeneke Road in Darien. Brett Jefferson is the founder and head of an asset management firm, Hildene Capital Management (Hildene), with approximately $1.4 billion in assets under management. The defendants used Harry Russell, an employee of Hildene, to help them create and manage the website that is at issue in the present case.

The arbitrator made the following specific factual findings and conclusions in his written award, none of which the defendants challenge. First, the arbitrator summarized the proceedings before him as follows.

"[The plaintiff] seeks the recovery of money damages for breach of contract on the part of [the defendants] in allegedly failing to pay the final invoice submitted by [the plaintiff] in the amount of $14,117.75 for services performed under separate agreements which the parties refer to familiarly as 'the Kitchen Contract' and 'the Bathroom Contract' in connection with the renovation work undertaken at the [defendants'] residence in Darien, Connecticut. In addition, [the plaintiff] seeks an award of compensatory and punitive damages as well as injunctive relief resulting from and related to the content of an Internet website created by or at the direction of [Brett Jefferson] and containing statements critical of [the plaintiff's] performance and practices during the course of the relationship between the parties. The website is alleged by [the plaintiff] to be defamatory.

"By way of Amended Answer to Demand for Arbitration and Amended Counterclaims . . . the [defendants] have denied liability to [the plaintiff] either for breach of contract or for defamation. [The defendants] have raised twelve defenses to [the plaintiff's] claims and have asserted six counterclaims (which have been pleaded jointly as defenses and counterclaims)."

Second, the arbitrator made certain specific findings of fact and conclusions of law in his award. In the course of rejecting the plaintiff's breach of contract

claim,[5] he addressed certain of the defendants' counter-claims, namely, that the plaintiff had "charged an unreasonable markup on its underlying costs or represented that it would charge a markup only on cabinetry . . . ."[6] The arbitrator found that these assertions of the defendants were "belied by the evidence." Specifically, with respect to the kitchen contract, the arbitrator found that the contract price of $212,835 was "consistent with budget information provided by [the plaintiff] to [the defendants] prior to the execution of the contract . . . . There is no evidence to suggest that the [defendants] did not know what they were to receive for that price. In addition, the testimony of Jennifer Howard, a designer who had initially been consulted by the [defendants] but who had no stake in this dispute, was instructive in terms of the pricing exercise that she and [the plaintiff] undertook for the defendants in early February of 2010 as well as on this issue of markups in general." With respect to the bathroom contract, the arbitrator similarly found, on the basis of evidence that he detailed in his award, that "the [defendants] understood what they would be getting for [the contract price of] $276,028—the essence of a bargained-for exchange."

Regarding the plaintiff's defamation claim, the arbitrator found as follows. "On or about November 11, 2011, the [defendants] published a website entitled 'SBD Kitchens Contract Issues' and subtitled 'SBD Kitchens SCAM (U) . . . in which numerous statements are made concerning the contracting process with [the plaintiff] as well as [its] performance." Although the initial motivation for the website was the defendants' frustration regarding their inability to secure cost information from the plaintiff, the "relationship between the parties fractured irreparably in early March of 2011 as a result of a conversation between [Brett] Jefferson and Karas of [the plaintiff] in which [Brett] Jefferson according to Karas, told Karas 'that he was going to destroy you, your business, your life, your reputation.'

"Thereafter [Brett] Jefferson worked with an employee of his company, Harry Russell, who in turn worked with a website designer, Michael Walker of Walker, Tek, to create the website, culminating in an e-mail sent by [Brett] Jefferson to Blank of [the plaintiff] at the close of business on November 11, 2011, with the subject line 'Happy Friday' enclosing a link to the new website. . . . The website remained active for approximately a year. It went offline in late 2012 and then was reactivated in April of 2013."

The arbitrator concluded that the contents of the website constituted "libel per se under Connecticut law." The arbitrator stated that "the website contains several false and/or defamatory statements. In addition to the appearance of the term 'SCAM' in the subtitle of the website, examples of these *include*:

" 'I feel that [the plaintiff] made misrepresentations

as to their form of compensation and that much of their work was inferior.'

" 'Another designer (Designer 2) was very clear that she only charged a markup on the cabinets. This methodology was similar to what was conveyed to us by [the plaintiff].'

" '[The plaintiff] with their deceptive pricing was motivated to have us select lesser quality items so they could achieve a greater markup.'

"The section of the website entitled 'Inferior Workmanship and Knowledge,' to the extent that it contains inaccurate statements of the factual circumstances concerning the beverage refrigerator, the vanity in the children's bathroom and the angled wall in Bathroom 6." (Emphasis added.)

The arbitrator stated: "When coupled with the content and tone of internal e-mails between and among [Brett Jefferson, Russell, Walker] and others, the conclusion is inescapable that publication of the website was motivated in large measure by a desire to embarrass [the plaintiff] and tarnish its reputation in the eyes of those who visited the website. It is also evident that efforts were made by [Brett] Jefferson and his agents to optimize the website so that it appears as a prominent search result when the term 'SBD' is the subject of a 'Google' or related search inquiry." The arbitrator also found, based on testimony of an advertising consultant, "that the existence of the website made it impractical and imprudent for [the plaintiff] to launch an advertising campaign." The arbitrator then specifically rejected the defendants' claims that the website statements constituted protected opinion under the first amendment, were immunized by the doctrine of fair comment or other privilege, and were true.

The arbitrator then stated: "*In accordance with Connecticut law*, and with the discretion vested in the trier of fact, [the plaintiff] is awarded the sum of $25,000 in general damages on the defamation claim. . . . Further, [the plaintiff] is awarded punitive damages, consisting of attorney's fees and costs allocable to the defamation issues, in the amount of $170,559.49, which consists of an award in the amount of $166,038.89 in attorney's fees and an award in the amount of $4,560.60 for stenographic services. These sums represent [70 percent] of the fees and stenographic costs incurred by [the plaintiff] rather than the [80 percent] requested."[7] (Emphasis added.) Finally, the arbitrator specified that "[t]his Award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims and counterclaims not expressly granted herein are denied."

The defendants' sole claim in their appeals to this court is that the arbitrator's award of punitive damages, consisting of attorney's fees and costs, must be vacated

because it was made in manifest disregard of the law. Specifically, the defendants argue as follows: under Connecticut law, in order for there to be an award of punitive damages in a defamation case, there must be proof of actual malice, defined as "the publication of a false statement with knowledge of its falsity or reckless disregard for its truth . . . ." *Gambardella* v. *Apple Health Care, Inc.*, 291 Conn. 620, 634, 969 A.2d 736 (2009). Actual malice is to be distinguished from "malice in fact," defined as "the publication of a false statement with bad faith or improper motive." Id. The parties had extensively briefed and argued this proposition of law to the arbitrator, "an experienced attorney in Connecticut with an extensive background in construction law." Because the arbitrator was required to make a "Reasoned Award," the defendants contend, he was required specifically to make a finding of actual malice in his award in order to justify his award of punitive damages, which he did not do. The language of his award, focusing on the defendants' motives, indicates instead that he based his award of punitive damages on a finding of malice in fact, which falls short of the legally required proof of actual malice. In this respect, the defendants further argue that, in reviewing the "Reasoned Award," we are confined to its four corners and may not examine the record to determine whether the record supports a finding of actual malice. Thus, the defendants maintain, the arbitrator manifestly disregarded the law of punitive damages in making his award. We disagree with the defendants.

We agree with the parties that our scope of review of the trial court's decision to confirm the award of punitive damages is plenary. See *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, 287 Conn. 189, 196, 947 A.2d 916 (2008); *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 475, 899 A.2d 523 (2006). We also agree with the parties that even an award made pursuant to an unrestricted submission to arbitration, such as in the present case,[8] must be vacated if the arbitrator manifestly disregarded the law in making his award; see *Design Tech, LLC* v. *Moriniere*, 146 Conn. App. 60, 67–68, 76 A.3d 712 (2013); *Teamsters Local Union No. 677* v. *Board of Education*, 122 Conn. App. 617, 622–23, 998 A.2d 1239 (2010); and that this rule of law applies equally to a punitive damage award made by an arbitrator. See *Nxegen, LLC* v. *Carbone*, 155 Conn. App. 264, 271, 109 A.3d 534, cert. denied, 316 Conn. 906,     A.3d     (2015). We conclude that the arbitrator, in awarding punitive damages, did not manifestly disregard the law.

It is well settled that, in order for an arbitration award to be set aside on the ground of manifest disregard of the law, the party challenging the award has the burden to establish three elements: "(1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of

a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 102, 881 A.2d 139 (2005). It is equally well settled that "[t]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . . Even if the [arbitrator] were to have misapplied the law . . . such a misconstruction of the law would not demonstrate the [arbitrator's] egregious or patently irrational rejection of clearly controlling legal principles. . . .

"This standard of proof has rarely, if ever, been met in Connecticut. . . . Indeed, [our Supreme Court] has acknowledged that [t]he exceptionally high burden for proving a claim of manifest disregard of the law under [General Statutes] § 52-418 (a) (4) is demonstrated by the fact that, since the test was first outlined in *Garrity* [v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992), the court had] yet to conclude that an arbitrator manifestly disregarded the law." (Citations omitted; internal quotation marks omitted.) *Design Tech*, *LLC* v. *Moriniere*, supra, 146 Conn. App. 68; accord *AFSCME*, *Council 4*, *Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 848 n.12, 6 A.3d 1142 (2010); *Nxegen*, *LLC* v. *Carbone*, supra, 155 Conn. App. 270–71.

As a substantive matter, both parties also agree that the well settled legal test for awarding punitive damages is that of actual malice, namely, "the publication of a false statement with knowledge of its falsity or reckless disregard for its truth"; *Gambardella* v. *Apple Health Care*, *Inc.*, supra, 291 Conn. 634; and that malice in fact, defined as "the publication of a false statement with bad faith or improper motive"; id.; is insufficient. It is clear to us from this record that this governing law is well-defined, explicit, and clearly applicable to the plaintiff's claim for punitive damages, and that the arbitrator appreciated its applicability. It is also clear from the record, that this is not a case in which the arbitrator exhibited an extraordinary lack of fidelity to established legal principles or, to put it another way, demonstrated an egregious or patently irrational rejection of clearly controlling legal principles, or chose to ignore those principles.[9]

In his award of punitive damages, the arbitrator, after identifying several "false and/or defamatory statements" that he found to have been made on the website, stated: "When coupled with the content and tone of internal e-mails between and among [Brett Jefferson, Russell, Walker] and others, the conclusion is inescapable that publication of the website was motivated in large measure by a desire to embarrass [the plaintiff] and tarnish its reputation in the eyes of those who

visited the website. It is also evident that efforts were made by Mr. Jefferson and his agents to optimize the website so that it appears as a prominent search result when the term 'SBD' is the subject of a 'Google' or related search inquiry. Further, Joseph Giaccone, an advertising consultant testified that the existence of the website made it impractical and imprudent for [the plaintiff] to launch an advertising campaign."

The arbitrator then concluded: "*In accordance with Connecticut law*, and with the discretion vested in the trier of fact, [the plaintiff] is awarded the sum of $25,000 in general damages on the defamation claim. See *Monroe* v. *Crandall*, 3 Conn. App. 214, [486 A.2d 657] (1985). *Further*, [the plaintiff] is awarded punitive damages, consisting of attorney's fees and costs allocable to the defamation issues, in the amount of $170,559.49, which consists of an award of $166,038.89 in attorney's fees and award in the amount of $4,560.60 for stenographic services." (Emphasis added.)

The arbitrator's decision and the record substantiating it lead us to conclude that he did not manifestly disregard the law in his award of punitive damages. First, the language of the decision itself displays an effort to follow the law, rather than to decide to ignore it. He prefaced his damages award by: "In accordance with Connecticut law . . . ." Although this phrase specifically preceded the compensatory damages award and was not repeated in the next sentence, which involved the punitive damages award, that next sentence began with "[f]urther," which we read to refer back to the immediately preceding reference to "[i]n accordance with Connecticut law . . . ."

This reading is consistent with the appellate principle that a reviewing court will engage in every reasonable presumption in favor of the validity of an arbitral award.[10] See *Board of Education* v. *Waterbury Teachers Assn.*, 216 Conn. 612, 617–18, 583 A.2d 626 (1990) (presumption of validity of award requires court to adopt interpretation supporting validity); *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 585, 440 A.2d 774 (1981) (every reasonable presumption of validity will be made in favor of arbitrator's decision). It is also consistent with the federal appellate principle of reading an arbitral award, challenged as a manifest disregard of the law, to yield a legally correct justification for its result. *Duferco International Steel Trading Co.* v. *T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome").

Second, the record amply supports the arbitrator's award of punitive damages. In this regard, we note that, again, the decision itself makes clear that the arbitrator, in citing the evidence to support his factual determina-

tions, did not intend his citations to be exclusive and plenary. For example, in finding that "the website contains several false and/or defamatory statements," the arbitrator stated, "[i]n addition to the appearance of the term 'SCAM' in the subtitle of the website, *examples of these include*" the four examples noted previously in this opinion, namely, that the website: falsely claimed that the plaintiff misrepresented their compensation structure and presented inferior work; falsely asserted that plaintiff promised to only markup the price on the cabinets; falsely alleged that the plaintiff engaged in deceptive pricing to achieve a greater profit; and inaccurately portrayed the circumstances surrounding the beverage refrigerator, children's bathroom vanity, and angled wall in one of the bathrooms. Additionally, when addressing the punitive damages award, the arbitrator prefaced that paragraph as follows: "[w]hen coupled with the content and tone of internal e-mails between and among [Brett Jefferson, Russell, Walker] and others" inviting the reader—including a reviewing court—to look beyond the four corners of his written decision for support.

Furthermore, as we have stated, the record contains ample support for the award of punitive damages in the present case. As the plaintiff notes in its brief, the record contains the following evidence that supports a finding of actual malice. The defendants acknowledged in the arbitration hearing that, contrary to the assertions in the website, neither Blank nor Howard; see footnote 6, of this opinion; had said that they only charged a markup on the cabinetry, or that other items would be passed through at cost. The defendants exercised no due diligence nor investigated the veracity of many of the defamatory statements in the website.[11] Brett Jefferson stated to Karas that he was going to destroy the plaintiff's business and reputation, as well as the lives and reputation of Karas and Blank. Brett Jefferson insisted on using the term "SCAM," a term that his agent, Russell, equated to "BS."[12] When the website was about to go live, Brett Jefferson asked Russell to e-mail a link to Blank under an anonymous name. Brett Jefferson posted a fake comment on the website, under a fake name, as part of a plan to get other people involved and join in the insults of Blank. He also e-mailed Karas as follows: "What I want you to know is that regardless of the outcome of the contract dispute the website . . . which I have created will never be taken down . . . and will have numerous back up sites in foreign jurisdictions . . . ." After temporarily taking down the website, the defendants republished it, including the false statements attributed to Howard, despite the fact that two months prior she had advised Brett Jefferson that she had never made those statements. We agree that this and other evidence in the record supports a finding of actual malice.

As the defendants clarified at oral argument in this

court, their claim that the arbitrator manifestly disregarded the law of punitive damages—by finding only what amounts to malice in fact rather than actual malice—rests solely on the fact that the parties required the arbitrator to render a "Reasoned Award" under the rules of the American Arbitration Association. This claim is without merit.

We first note that those rules do not define further what is meant by a reasoned award—only that it is among the several forms of award that the parties to an arbitration may require, namely, that "[t]he parties may request a specific form of award, including a reasoned opinion, an abbreviated opinion, findings of fact and conclusions of law  . . . ."[13] Although there is no Connecticut authority defining a reasoned award under the rules of the American Arbitration Association, several federal courts have done so.[14] The common theme of those federal authorities, with which we agree, is that a reasoned award means something more than a simple result and less than specific findings of fact and conclusions of law. See, e.g., *Rain CII Carbon, LLC* v. *Conocophillips Co.*, 674 F.3d 469, 473 (5th Cir. 2012); *Cat Charter, LLC* v. *Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011); *Sarofim* v. *Trust Co. of the West*, 440 F.3d 213, 215 n.1 (5th Cir. 2006); *R & Q Reinsurance Co.* v. *American Motorist Ins. Co.*, United States District Court, Docket No. 10 C 2825 (GWL) (N.D. Ill. October 14, 2010).

Of these authorities, the most compelling and pertinent to the present case is that of the Fifth Circuit Court of Appeals in *Sarofim* v. *Trust Company of the West*, supra, 440 F.3d 213, because in that case the court specifically rejected the proposition that the defendants argue here, namely, that appellate review of a "reasoned award" is "confined to the four corners of the arbitral award, and that [the court] may not consider evidence from the record which supports the punitive damages award." (Internal quotation marks omitted.) Id., 217. We agree with the court in *Sarofim* that, to the contrary, we may consider "all the information available to the court on review for manifest disregard." (Internal quotation marks omitted.) Id. We do so for two reasons.

First, confining ourselves to the four corners of the arbitrator's award would be inconsistent with the generally accepted propositions that courts favor arbitration; *Board of Education* v. *Wallingford Education Assn.*, 271 Conn. 634, 639, 858 A.2d 762 (2004); and that we give great deference to the factual findings and legal conclusions of the arbitrator. *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 784, 830 A.2d 729 (2003). Second, we are mindful that, although this arbitrator was an attorney with extensive experience in construction law, not all American Arbitration Association arbitrators would have the same level of expertise. Imposing on

all such arbitrators the stringent drafting standard that the defendants' argument entails would be unduly restrictive on those arbitrators who, although expert in the field of construction, probably would not possess the acumen in opinion drafting that would be required under that standard. Thus, it is the wiser policy, consistent with the judicial policy of favoring arbitration, to permit the reviewing court to examine the entire record for factual and evidentiary support of the award.

## II

In the third appeal, AC 36613, the plaintiff makes a single claim: the trial court improperly denied its motion for attorney's fees and costs incurred in litigating the applications to vacate and to confirm the arbitration awards in the trial court following the arbitration proceedings and award. We disagree and, accordingly, affirm the judgment of the court denying the plaintiff's motion for attorney's fees.

The following procedural posture of the case is relevant to this appeal. Following the arbitrator's award of damages and injunctive relief in favor of the plaintiff,[15] considerable litigation and procedural wrangling took place. The defendants filed two separate applications, one to vacate in part and the other to confirm in part; and the plaintiff objected to both applications, claiming that the court lacked subject matter jurisdiction to decide the applications because they were filed in the arbitration action. The plaintiff filed its own application to confirm the award in the contract action, as well as a motion regarding the defendants' assertion that they would be paying the compensatory damage award of $25,000, which they did not challenge, in coins.[16]

The court heard argument on the competing applications and the motion regarding payment of the compensatory damage award over the course of three different days. The court identified what was not disputed by the defendants, namely, the validity of the agreement to arbitrate, the arbitrator's authority to decide the matters submitted to him, including the request for injunctive relief, the award of compensatory damages, and the award of fees and expenses of the arbitration association. In addition, the defendants acknowledged that the submission was unrestricted. The defendants did not dispute at the time the court heard argument on the motions the validity of the arbitrator's award regarding liability and compensatory damages, including those portions adverse to it.[17] The only disputed issues, therefore, at that time, were that the award of punitive damages and the scope of the injunctive relief were in manifest disregard of the law, as claimed by the defendants, as well as the outstanding issue of the form of payment of the award of $25,000 in compensatory damages.

With regard to this latter issue, the defendants

asserted that they had the right to pay the award in coins because coins are legal tender. During the proceedings, the court noted that, if the defendants were correct in this regard, the court would probably require them to file an affidavit attesting to the examination of every coin to ensure that it was in fact legal tender. In response, the defendants eventually represented on the record that any payment of the compensatory damages award would be made by check, as a result of which the court took no formal action on the matter. But see footnote 18 of this opinion.

With respect to the merits of the applications, the court denied the defendants' application to vacate the award, and granted the plaintiff's application to confirm the award. Subsequently, the plaintiff moved for attorney's fees and costs in both cases—the arbitration action and the contract action—in the total amount of $86,296.58. The court denied that motion. The plaintiff's appeal followed.

The plaintiff claims that it is entitled to an award of attorney's fees and costs for the trial court proceedings because the original fees and costs were awarded by the arbitrator based upon the defendants' " 'intentional and wrongful conduct,' " and the trial court proceedings were necessary " 'to obtain judgment in the matter.' " Thus, the plaintiff maintains, such an award is justified to ensure that it is made whole and to avoid rewarding the defendants' "clear strategy to effectively gut the Award—or wipe it out in full—by forcing [the plaintiff] to incur substantial additional fees."[18] In short, the plaintiff argues that the attorney's fees and costs it seeks are simply an extension of the fees and costs awarded it by the arbitrator. We disagree.

We first address, briefly, our scope of review. Because the issue involves the question of the court's *authority* to award attorney's fees in the present case, rather than whether the court abused its discretion in denying such an award, the question is one of law and our scope of review is plenary. See *Deutsche Bank National Trust Co.* v. *Bertrand*, 140 Conn. App. 646, 655–56, 59 A.3d 864 (challenges to trial court's authority to act raises questions of law resulting in plenary review), cert. dismissed, 309 Conn. 905, 68 A.3d 661 (2013).

Our starting point in the plaintiff's claim, as with many claims for attorney's fees and costs associated with litigation, is Connecticut's adherence to the American rule. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery

of attorney's fees and costs . . . or a statute may confer such rights. . . . This court also has recognized a bad faith exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007).[19]

The short answer to the plaintiff's claim is that there is neither a specific contractual term between the parties providing for attorney's fees and costs in the event of litigation between them, nor a statute providing for litigation expenses in proceedings to confirm or vacate an arbitration award. See, e.g., General Statutes § 42-110g (d) (providing for recovery of attorney's fees under CUTPA).[20] It is true, as the plaintiff points out, a court or jury (or arbitrator, as in the present case), may, in addition to using contract or statute as a basis for an award of punitive damages, award such damages on the basis of a party's wanton or wilful malicious misconduct. See, e.g., *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 646, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). But that award already has been made by the arbitrator in the present case, in the form of his award of punitive damages, which both the trial court and this court have affirmed. See part I of this opinion.

The longer answer to the plaintiff's claim lies in the reasoning of *O'Leary* v. *Industrial Park Corp.*, 211 Conn. 648, 560 A.2d 968 (1989). In *O'Leary*, the two plaintiffs prevailed in the trial court on a civil claim for fraud, and the jury awarded them punitive damages, including attorney's fees, as part of the verdict in their favor. Id., 649. After successfully defending the judgment on the defendants' appeal to this court, the plaintiffs sought, in the trial court, additional attorney's fees incurred in opposing the defendants' appeal. Id., 651. The trial court denied their motion for such fees, and our Supreme Court affirmed, holding that the trial court was without authority to modify its judgment "to include attorney's fees incurred in defending an appeal." Id., 649.

The court began its reasoning with a restatement of the American rule, namely, that "[a]bsent contractual or statutory authorization there can be no recovery, either as costs or damages . . . for counsel fees by a party opponent from his opponent." (Internal quotation marks omitted.) Id., 651. The court then stated that an exception to this general rule is that such fees may be awarded as a component of punitive damages upon a showing of fraud. Id. The court concluded, however, that "[t]here is no authority to support the plaintiffs' contention that the common law rule providing for the recovery of punitive damages in actions of fraud includes recovery for the costs incurred in defending a subsequent appeal." Id.

Although not strictly controlling because of its different procedural posture from the present case, *O'Leary* is analogous. In both cases, the party seeking further punitive damages bases its claim, not on the prelitigation substantive, tortious conduct of the other party—which had already been taken into account in the monetary award—but on the subsequent litigation tactics of the other party. In *O'Leary*, the party seeking the appellate fees did so on the purported basis that they were necessary to preserve the judgment secured in the trial court. In the present case, the plaintiff seeks such fees and costs on the basis that they were necessarily incurred in obtaining the judgment of confirmation of the underlying award. In our view, however, this is a distinction without a difference. In both, the parties seeking the additional fees argued that they were necessary to preserve the award gained in the underlying litigation. In sum, we can see no principled reason for distinguishing our Supreme Court's conclusion in *O'Leary* from the present case.

We are not persuaded by the plaintiff's contention that the attorney's fees and costs it seeks in the present case are simply an extension of the award made by the arbitrator. That award was made not on the basis of any litigation tactics of the defendants, but on the basis of their prearbitration tortious and malicious conduct. In the present appeal, the plaintiff seeks attorney's fees as compensation for the defendants' postarbitration litigation tactics in the trial court. Thus, contrary to the plaintiff's argument, the fees and costs they seek here are not an extension of those awarded by the arbitrator. They are, instead, fees and costs incurred because of what they claim to be unnecessary and ill-founded litigation tactics employed by the defendants and their counsel in the trial court. This is more than a difference in degree; it is a difference in kind.

Nor are we persuaded by the five trial court authorities presented to us by the plaintiff in support of its position—all cases in which the trial court awarded the party who prevailed in an arbitration, including an award of attorney's fees and costs, additional attorney's fees and costs for the confirmation and vacating proceedings. In four of those cases, there was either a fee shifting contractual provision between the parties authorizing attorney's fees and costs to the prevailing party; see *Loeb* v. *Blue Star Jets*, *LLC*, United States District Court, Docket No. 09-CV-7858 (SAS) (S.D.N.Y. December 17, 2009); or a statute, such as CUTPA, authorizing such an award. See *Gomez* v. *People's United Bank*, United States District Court, Docket No. 3:10-CV-00904 (CSH) (D. Conn. September 5, 2012); *Hadelman* v. *DeLuca*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-97-0060279-S (April 19, 2006) (41 Conn. L. Rptr. 238); *Saturn Construction Co.* v. *Premier Roofing Co.*, Superior Court, judicial

district of New Haven, Docket No. CV-94-0363698-S (October 24, 1996) (18 Conn. L. Rptr. 106). In the fifth case; *Harris* v. *Bradley Memorial Hospital*, Superior Court, judicial district of New Britain, Docket No. CV-02-0516962-S (February 17, 2011), rev'd on other grounds, 306 Conn 304, 50 A.3d 841 (2012), cert. denied, U.S. , 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2013); the trial court awarded such fees and costs despite the absence of any contract or statute authorizing them. We simply disagree with that case, for the reasons we have stated herein.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Although their formal status as plaintiff and defendant may differ as to each of the appeals, for convenience we refer in this opinion to SBD Kitchens, LLC, as the plaintiff, and to Brett Jefferson and Catherine Jefferson as the defendants.

[2] The parties agree that their arbitration agreement required the arbitrator to render a "Reasoned Award," which is a term contained in Rule 44 (b) of the American Arbitration Association Rules that governed the arbitration proceeding in the present case. That rule provides in relevant part that "[t]he parties may request a specific form of award, including *a reasoned opinion*, an abbreviated opinion, findings of fact and conclusions of law. . . . If the parties agree on a form of award other than that specified in R-44 (b) of these Rules the arbitrator shall provide the form of award agreed upon." (Emphasis added.) We discuss the meaning of this requirement later in this opinion.

[3] The arbitrator, Robert J. O'Brien, is a partner in a Connecticut law firm, and was a past Chair of the Construction Law Section of the Connecticut Bar Association, and is a member of the American Bar Association's Forum Committee of the Construction Industry.

[4] The record does not reflect all of the counterclaims and defenses raised by the defendants. The arbitrator noted in his decision that the defendants raised twelve distinct counterclaims and defenses, six of which addressed the plaintiff's breach of contract claim. Among those defenses raised in response to the plaintiff's defamation claim, the arbitrator specifically addressed the defendants' assertion that the speech was protected opinion, that it was immunized by the "fair comment" doctrine or other qualified privilege, and a defense of truth. The remaining defenses and counterclaims have not been specifically stated in the record.

[5] The arbitrator rejected the plaintiff's breach of contract claim on the ground that the two contracts were, for various reasons, not in compliance with the Connecticut Home Improvement Act, General Statutes § 20-148 et seq. Nonetheless, the arbitrator declined to award any monetary relief to the defendants because they had not established an ascertainable loss. Neither party has challenged these determinations.

[6] The basis for this counterclaim, as described in the defendants' appellate brief in this court, was that the plaintiff "misled the [defendants] concerning the markup they would be charged on their kitchen and bathroom renovation. The basis of this good faith belief was that both [the plaintiff] and another designer who[m] they interviewed told them that, in response to the [defendants'] question as to how they made their money, they made it through a markup on cabinetry." Instead, according to the defendants, the plaintiff "charged the [defendants] an undisclosed 90 percent markup on nearly every aspect of the project, except appliances . . . ." Thus, it was the defendants' contention in essence that, despite the written contracts that, albeit not enforceable under the Home Improvement Act, specified amounts for the plaintiff's work, the plaintiff had agreed to charge on the basis that there would be a markup on the cabinetry only and that all other work, except for appliances, would be performed for the defendants on the basis of the plaintiff's cost only. As part of this contention, the defendants had claimed that Jennifer Howard, the other designer mentioned in the arbitrator's award, had agreed to this pricing model. At the hearing, however, Howard denied any such agreement, and instead confirmed that she provided estimates at above cost for all portions of the project.

[7] In addition, the arbitrator permanently enjoined the defendants from

making certain specified further statements on the website. The defendants do not challenge that part of the award.

[8] The parties agree that, despite the requirement of a "reasoned award," the submission was unrestricted.

[9] The plaintiff argues that, not only did the arbitrator not manifestly disregard the governing law, but that he applied it as properly as a trial court would have because a finding of actual malice is implicit in his award. It is not, however, necessary for us to decide whether the arbitrator correctly applied the law; we have only to decide whether the arbitrator manifestly disregarded the law. See *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 308 n.12, 680 A.2d 1274 (1996).

[10] In this opinion, we note that the defendants do not claim that the arbitral award is ambiguous, and we agree. Thus, this is not an occasion for a remand to the arbitrator for clarification of an ambiguous award. See, e.g., *All Seasons Services, Inc.* v. *Guildner*, 94 Conn. App. 1, 13, 891 A.2d 97 (2006).

[11] The record also indicates that the defendants failed to exercise any due diligence to determine the following: whether Howard had ever made any of the statements attributed to her on the website, which she denied having made; whether they inquired of their architect if the statements published on the website regarding the plaintiff's role in the design of one of the bathrooms was accurate, as the evidence showed that the architect, not the plaintiff as claimed on the website, designed the bathroom in question; whether the statements on the website regarding the plaintiff's knowledge of residential glass door refrigerators should have been removed, as the defendants acknowledged the falsity of said statements and the arbitrator ultimately enjoined them from further publication; and whether the defendants should have considered the general accuracy of the content on the website or its potential impact on the plaintiff's business, which the defendants testified they failed to do.

[12] In this regard, among the e-mails that the arbitrator referred to in his decision for tone and content, was one from Russell to the webhost: "How hard is it to change that by the way? He [Jefferson] wants to incorporate Scam or some BS. *He cares far less now about discretion.* Do you see the crap I deal with?" (Emphasis added.)

[13] Although the rules of the American Arbitration Association refer to it as a "reasoned opinion," the parties have used the term "reasoned award." Accordingly, we adopt the terminology used by the parties.

[14] This court has only once contemplated the notion of a "reasoned award," and in those circumstances the term was used to mean a decision which "contains findings." *Alderman & Alderman* v. *Pollack*, 100 Conn. App. 80, 94, 917 A.2d 60 (2007). We note that in *Alderman* this court was using the term "reasoned" as a colloquialism under a different set of arbitration rules than those set out by the American Arbitration Association, and thus that case does not provide guidance in the present case.

[15] The award specifically contemplated that confirmation would be required because it specified that interest on the award would start to accrue thirty days from the date of its confirmation.

[16] The motion regarding the method of payment from the award stemmed from an e-mail to the plaintiff asserting that the defendants had elected to pay the $25,000 award in coins, to be delivered in fifty-five gallon containers. The e-mail noted that the coins would be dumped from the containers upon delivery unless the plaintiff paid the defendants $5000 per container. The defendants stated in the e-mail that failure to accept the coins would result in them deeming the plaintiff to have abandoned the award. The plaintiff immediately objected to this form of payment, and requested sanctions against both the defendants and their counsel. Because the trial court took no formal action on this motion due to the defendants agreeing to change the means of payment, the request for sanctions was not addressed.

[17] Before the trial court ruled on the applications to vacate and confirm, the defendants reversed this position, claiming that the compensatory award was "fatally flawed" because it did not set a date certain for payment of the award. Because the defendants' retraction was by motion for permission to submit an affidavit of their counsel, and was collateral to the existing application to vacate, the court ruled the affidavit immaterial and denied the defendants' motion. Following the trial court's decision regarding the applications to vacate and confirm, the plaintiff filed a judgment lien against the defendants' property. On August 18, 2014, the defendants filed a motion to discharge the judgment lien upon substitution of a bond, or, in the alternative, for declaratory judgment that the arbitrator's decision was unenforceable due to the "fatal flaws" that they asserted in the affidavit. The trial

court denied the defendants' motion as to the argument that the arbitrator's decision was unenforceable on September 22, 2014. The defendants then appealed that decision to this court. That appeal was dismissed by this court on February 11, 2015.

[18] The plaintiff points to the following tactics of the defendants in the trial court as support for its claim of attorney's fees and costs: the defendants' initial threat to pay the compensatory award in coins; their subsequent attempt to retract their earlier representation on the record that they would pay it by check; their threat to the plaintiff's counsel that "[Brett] Jefferson would like you to know that he has acquired the right to the web domain [a title that included the name of plaintiff's counsel], where he intends to elaborate on your legal tactics"; and their threat, following the issuance of the award by the arbitrator, to sue the plaintiff for vexatious litigation in connection with its defamation claim, in which suit the plaintiff's present counsel would be precluded from representing the plaintiff, notwithstanding that the plaintiff had prevailed on the defamation claim and that, under Connecticut law, a claim asserted in arbitration cannot form the basis of a vexatious litigation claim. Thus, the plaintiff asserts, "[t]hat conduct, and the communications, legal research and motion practice arising therefrom, caused the cost of what should have been a straightforward confirmation proceeding to increase dramatically."

[19] The plaintiff in the present action specifically does not rely on the bad faith exception for its claim of attorney's fees and costs.

[20] General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under [CUTPA], the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."